338 So.2d 89 (1976)
FOOD FAIR STORES, INC., d/b/a Pantry Pride Stores, et al., Appellants,
v.
Clarence L. MORGAN, Appellee.
No. 75-1294.
District Court of Appeal of Florida, Second District.
October 13, 1976.
*90 John R. Bush of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellants.
David B. Webster of Charlton, Webster & Caltagirone and David A. Maney of Gordon & Maney, Tampa, for appellee.
SCHEB, Judge.
Plaintiff/appellee recovered a jury verdict of $75,000 for compensatory damages in an action for assault and battery against the defendants/appellants.[1] Defendants' motion for a remittitur or in the alternative a new trial was denied by the trial court. Defendants appeal. We reverse.
On the evening of August 10, 1974, the plaintiff, Clarence L. Morgan, and his two daughters, ages 3 and 13, went shopping at the defendant Food Fair's Pantry Pride Supermarket in Floriland Mall in Tampa. While in the checkout line, the plaintiff observed the defendant Robert E. Darling, one of the store's security investigators, reprimand the young woman who was the cashier. Plaintiff took umbrage to Mr. Darling's conduct and spoke to him in defense of the cashier. An argument between plaintiff and Mr. Darling ensued and the plaintiff left the store. While in front of the store and in presence of his two daughters, he was knocked to the ground and beaten by Darling, the defendant Harry L. Pope, and another man, all of whom were employees of Food Fair. When a police officer arrived, the incident ended with no arrests and the plaintiff and his daughters returned to his car in the parking lot. After taking his daughters home, plaintiff went to a hospital emergency room for treatment, complaining of injuries to his shoulder, elbow and back. He was treated and released shortly thereafter.
Plaintiff Morgan is a 40-year old self-employed cabinet maker. Although Morgan did not suffer any great loss of movement and continued at his work following the *91 incident, he testified that sometimes he now quits work earlier than usual because of back pain. He complained of frequent discomfort in his back, particularly at night in bed "... if I'm laying the wrong way." He also suffered a chipped tooth from the altercation. Morgan consulted Dr. Maurice Cohen, a physician, whose diagnosis was that the plaintiff had suffered acute cervical and dorsal sprain and bursitis of the right elbow. Dr. Cohen saw the plaintiff six times and treated him conservatively. After treatment was underway, Dr. Cohen died. Plaintiff then consulted an osteopathic physician, Dr. Rodney Griffin, who agreed with Dr. Cohen's diagnosis. Dr. Griffin saw the plaintiff seven times and continued a conservative course of treatment, prescribing muscle relaxants, exercises and diathermic treatments.
In addition to the emergency room bill of $42.50, the plaintiff produced medical bills from Dr. Cohen and Dr. Griffin for $225 and $103, respectively. No other special damages were established. Although the jury had before it the records from the hospital showing plaintiff's x-rays and electrocardiogram to be normal, and the records from Dr. Cohen's Office, Dr. Griffin was the only medical expert who testified at the trial. He opined that within the bounds of reasonable osteopathic certainty, plaintiff Morgan suffers "permanent or chronic strain and sprain" in his back. Dr. Griffin concluded that an operation to relieve the condition would not be surgically feasible.
The views of the advocates contrast sharply. Plaintiff's counsel suggests that for this court to order a remittitur would be judicial tyranny. Defendant's counsel argues that the verdict of $75,000 demonstrates a case of inflamed passions of the jury awarding a sum not even suggestively sustained by the evidence.
Unquestionably there was sufficient evidence for the jury to find the defendant Food Fair's employees committed an assault and battery against Morgan. Plaintiff was entitled to recover all reasonable medical costs attendant thereto, damages for the mental anguish and humiliation he suffered at hands of the defendants, as well as for the pain and suffering he endured as a result of his injuries and any loss of capacity to enjoy life. Glickstein v. Setzer, 78 So.2d 374 (Fla. 1955). Dr. Griffin's testimony furnished an evidentiary basis for the court's instruction on permanent injuries. There was, however, no evidence of the need for any future medical expenses or, aside from plaintiff's statement that he occasionally left work early, no proof of lost earnings or of any diminished earning capacity.
Here the record impels us to conclude the jury viewed the evidence from a punitive as well as a compensatory standpoint. This conclusion is bolstered by opening statements by counsel for the plaintiff concerning the count, later dismissed, of malicious prosecution of the plaintiff and the evidence understandably adduced in support of that count of his complaint. There was considerable other testimony from which the jury could properly conclude that the behavior of the defendants' employees was flagrant. However, the issue of punitive damages was not before the court and, of course, was not submitted to the jury.[2] On basis of the evidence before us and even granting the jury the widest acceptable latitude in awarding damages, we find $75,000 to be a grossly excessive verdict.
An appellate court must act with great restraint in review of jury awards in tort actions. The very paucity of decisions of this court granting remittiturs attests to our reluctance to encroach upon the jury's role or upon the judgment of the trial court in denying requests for remittiturs. But where, as here, we determine there is no *92 reasonable basis for the award, it is necessary for us to act to relieve a defendant from an obviously excessive verdict. As stated in Smith v. Goodpasture, 179 So.2d 240 (Fla.2d DCA 1965), we must attempt to "measure that which is immeasurable" since we are dealing with intangible elements of damage such as pain and suffering and humiliation. And, while we must not apply a slide rule to calculate damages in tort actions, in some cases it becomes necessary to use a yardstick. We think this is one of those cases. From a review of the entire evidence, we conclude that any award in excess of $50,000 for compensatory damages cannot find any rational support in the evidence. The verdict, therefore, is so great as to shock our judicial conscience. See Bartholf v. Baker, 71 So.2d 480 (Fla. 1954).
We reverse the judgment of the trial court with directions that if the plaintiff shall enter a remittitur in the amount of $25,000 then a judgment for $50,000 plus interest and costs, may be entered against the defendants. If the plaintiff fails to enter such remittitur within ten days after the filing of the mandate of this court, then the trial court shall order a new trial as to damages only on the assault and battery count against the defendant.
BOARDMAN, A.C.J., and GRIMES, J., concur.
NOTES
[1] The trial court directed a verdict in favor of the defendants on two other counts, one alleging negligent hiring of employees and the other alleging malicious prosecution of the plaintiff.
[2] At the conclusion of the evidence, plaintiff sought to amend his complaint to seek punitive as well as compensatory damages. Despite evidence which may have been sufficient to go to the jury on proper allegation and prayer for punitive damages, we think there was no abuse of discretion when the trial judge denied the request at that late stage of the trial. Triax v. City of Treasure Island, 208 So.2d 669 (Fla.2d DCA 1968). In any event, there was no cross-assignment of error on this point.