427 So.2d 803 (1983)
Robert V. CARIDA, Appellant,
v.
HOLY CROSS HOSPITAL, INC., Appellee.
No. 81-389.
District Court of Appeal of Florida, Fourth District.
March 9, 1983.
*804 David A. Hoines, Fort Lauderdale, for appellant.
Gerald M. Morris, Fort Lauderdale, for appellee.
GLICKSTEIN, Judge.
Appellant, a former member of the medical staff of Holy Cross Hospital, a private hospital in Fort Lauderdale, brought *805 an action for compensatory and punitive damages against the hospital as a result of its refusal to reappoint him to that staff. The trial court dismissed Counts IV and V of his third amended complaint with prejudice.[1] We reverse and remand.
The trial court dismissed the two counts in reliance upon West Coast Hospital Association v. Hoare, 64 So.2d 293 (Fla. 1954), which held, in determining the authority of a private hospital to grant, withhold or refuse its facilities to a physician, that a private hospital was not subject to the laws, rules and regulations of a public hospital. It was the trial court's apparent conclusion that, although appellant's pleading alleged in Count IV the denial of his reappointment to be the result of procedural irregularities and a basic substantive deficiency and in Count V that these incidents were occasioned with malice, the status of appellant as a private hospital compelled dismissal. The foundation for the decision falls, however, because of section 395.065, Florida Statutes (1975).
When West Coast Hospital Association v. Hoare was decided, chapter 395, Florida Statutes (1953), applied to both private and public hospitals; but twenty years elapsed before the Florida Legislature enacted section 395.065. By inclusion in that chapter, the statute did away with the public versus private hospital distinction in denying or restricting medical staff privileges. Further, it established the substantive and procedural requirements to be employed by all hospitals in this critical area of concern and restricted liability to instances of malice.[2] The standards of the Joint Commission of Accreditation of Hospitals (JCAH) to which the statute referred and which apply to private hospitals were predicated on fairness of hearing and appellate review mechanisms.[3] Two years after the enactment *806 of the statute, the Department of Health and Rehabilitative Services (HRS) promulgated Rule 10D-28.58(2)(d), Florida Administrative Code, which imposed upon all hospitals the requirements of a hearing and thorough investigation of applications for appointment and reappointment to medical staffs.[4]
When appellant's reappointment to appellee's medical staff was denied, the foregoing statute, standards and rule were in effect; therefore, we must review the allegations of appellant's third amended complaint in light of their requirements.
In Count IV, appellant lays down a broad barrage of non-compliance by appellee with its by-laws, procedurally and substantively, as well as the foregoing JCAH standards and HRS rule. In Count V he adds one paragraph to the allegations of Count IV, setting forth a variety of "malicious failures."[5]
In a case involving denial of reappointment to a medical staff, a cause of action for damages pursuant to section 395.065(2)[6] requires that malice be alleged, together with an allegation of an action taken pursuant to the statute. Count IV is void of any allegation of malice. Appellant's allegations therein fall into the following categories; and malice is not expressed  even by general averment  nor is it implicit in any of them:
1. The notice of hearing from the hospital's executive director was insufficient to inform him of the charges against him, in *807 that it merely said he was not reappointed because of his conduct; and the subject by-law requires that the notice of hearing
state in concise language the acts or omissions with which the practitioner is charged, a list of specific or representative charts being questioned, and/or the other reasons or subject matter that was considered in making the adverse recommendation or decision.
2. Appellee continued to refuse to inform him of the particulars of the charge against him, notwithstanding demands for such information.
3. Appellee's decision not to reappoint him was arbitrary and capricious, and the failure to notify him of the particular charges against him prejudiced his ability to challenge on appellate review the adverse recommendation of the medical staff's executive committee.
4. One of the members of the medical staff which considered appellant's reappointment was also on the hearing committee.
5. Evidence was presented against him in the form of written statements, precluding his right of cross-examination.
6. Written statements and other materials were not furnished him for examination.
7. He was generally deprived of due process as guaranteed by article I, section 9, Florida Constitution.
In the absence of any allegation that appellee maliciously refused to reappoint appellant to its medical staff, Count IV failed to state a cause of action pursuant to section 395.065(2) that would entitle appellant to relief in the form of damages.
Nevertheless, it was inappropriate to dismiss the pleading. In Count V, appellant repeated all of the allegations in Count IV and added the following allegations:
48. Defendant's malicious and intentional disregard for the property rights of the Plaintiff is underscored by the following:
1. Defendant's intentional and malicious failure to follow its own rules (the Medical Staff By-Laws) as set forth above.
2. Defendant's intentional and malicious failure to follow the criteria set forth in Standard IX of the Joint Commission of Accredidation of Hospitals which have been elevated to the force and effect of law pursuant to Florida Statute 395.065(1).
3. Defendant's intentional and malicious failure to follow the rules and regulations contained in the Florida Administrative Code.
4. Defendant's intentional and malicious failure to reappoint Plaintiff to its Medical Staff in an arbitrary and capricious manner while requiring the Plaintiff to adhere to the above-referenced rules, regulations and standards.
As a result of the foregoing, the Defendant has maliciously and intentionally destroyed the Plaintiff's livelihood and has thereby evidenced a wanton disregard for the property rights of the Plaintiff thereby justifying an award of punitive damages.
Appellant's only prayer in Count V was for punitive damages. It is apparent that paragraph 48 and the foregoing prayer in Count V logically lie together with the prayer for compensatory damages in Count IV; therefore, it is proper for this court to consider the two counts as one.[7] When we do so, we conclude that the allegation directed against appellee which saves the combined counts from dismissal is the following language in subparagraph 4 of paragraph 48:

*808 malicious failure to reappoint Plaintiff to its Medical Staff... .
Accordingly, we reverse and remand with direction to permit appellant to replead Counts IV and V as a single count, limited to the prayers for damages now contained therein. In doing so, we hold that appellant has abandoned any opportunity to seek injunctive relief, by his having filed not only an original but also three amended complaints without having made allegations nor prayer appropriate thereto and by his having pursued this appeal without mention thereof. Under such circumstances we find the last sentence of Florida Rule of Civil Procedure 1.110(b)[8] to be inapplicable and not employable as a foundation for such claim by appellant in the trial court upon remand, should he undertake to make such claim.
DOWNEY and DELL, JJ., concur.
NOTES
[1] By order we directed appellant to file a Suggestion of Status, which revealed that Counts I, II and III thereof are still pending before the trial court. Upon our examination of those counts we have sua sponte determined that the order is appealable pursuant to Mendez v. West Flagler Family Association, 303 So.2d 1 (Fla. 1974), the dismissed counts being separate and distinct causes of action not interdependent with those remaining.
[2] Section 395.065 provides:

(1) The medical staff of any hospital licensed pursuant to this chapter is authorized to suspend, deny, revoke, or curtail the staff privileges of any staff member for good cause, which shall include, but not be limited to:
(a) Incompetence.
(b) Negligence.
(c) Being found an habitual user of intoxicants or drugs to the extent that the physician is deemed dangerous to himself or others.
(d) Being found liable by a court of competent jurisdiction for medical malpractice.
However, the procedures for such actions shall comply with the standards outlined by the Joint Commission of Accreditation of Hospitals and the Principles of Participation in the Federal Health Insurance Program for the Aged.
(2) There shall be no liability on the part of, and no cause of action of any nature shall arise against, any hospital, hospital medical staff, or hospital disciplinary body or its agents or employees for any action taken in good faith and without malice in carrying out the provisions of this section.
[3] Standard III of the section titled "Medical Staff" provides for:

the establishment of fair hearing and appellate review mechanisms, when requested by the practitioner in connection with medical staff recommendations for denial of staff appointments, as well as the denial of reappointments, or the curtailment, suspension, or revocation of privileges. It is recognized that the mechanism for individuals applying for initial medical staff appointment or privileges may differ from that which is applicable to medical staff members. These mechanisms should specify the following: the period of time beyond which the right to request a hearing is waived; the right to introduce witnesses or evidence; the role of legal counsel if any; and the fixed periods of time in which each action shall be completed, including final action by the governing body. Where a grievance mechanism is established by law, as in the case of employed medical staff members in a governmental facility, this mechanism shall be deemed to be acceptable.
Standard IX of the section titled "Governing Body & Management" provides in part:
The appointment and reappointment of medical staff members should be based upon well-defined and written criteria related to the goals and standards of the hospital, as set forth in the bylaws, rules and regulations of the medical staff. The governing body shall utilize the advice of the medical staff in granting and defining the scope of clinical privileges to individuals, commensurate with their qualifications, experience, and present capabilities.
[4] Rule 10D-28.58(2)(d) requires:

Review of all applications for appointment and annual reappointment to all categories of staff, and recommendations on each to the governing authority, including delineation of privileges to be granted in each case, and right of hearing and appeal. Recommendation to the governing body for withdrawal of any privileges of a member of the medical staff or dismissal from the medical staff will be made only after a thorough investigation by the medical staff or a committee thereof, with the subject member being given the right of hearing before the medical staff or a committee thereof.
[5] Florida Rule of Civil Procedure 1.120(b), provides in part:

Malice, intent, knowledge, mental attitude and other condition of mind of a person may be averred generally.
See Gangelhoff v. Lokey Motors Co., 270 So.2d 58 (Fla.2d 1972). See also 5 C. Wright & A. Miller, Federal Practice and Procedure § 1301, at 426 (1969), for a discussion of the identical language in the corresponding federal rule of civil procedure.
[6] Section 395.065(2) expressly concerns itself with "liability," which we construe to mean responsibility for damages proximately resulting from a tort. We also construe the subsequent phrase in the same subsection, "cause of action of any nature," as referring to and limited by the word "liability." Were we to construe this subsection as completely eliminating any cause of action of any nature against a hospital which gave such inadequate notice of the reasons reappointment was not being recommended, but without malice, then any determinative hearing could be held by the hospital with complete immunity, notwithstanding the physician's substantial inability to prepare therefor. Similarly, any arbitrary and capricious, but not malicious action taken upon an application for reappointment would go totally unanswered. Article I, section 21, Florida Constitution, will not tolerate that happening, as it provides:

The courts shall be open to every person for redress of any injury... .
This interpretation is consistent with Margolin v. Morton F. Plant Hospital Association, 348 So.2d 57, 57 (Fla. 2d DCA 1977), which held:
In Count IV the appellant/doctor asserts that he was denied fundamental due process rights by appellee/Morton Plant Hospital Association, Inc. in removing him from the hospital staff. Even though the hospital in question is a private hospital this count states a cause of action for injunctive relief because it includes allegations that in the course of revoking the appellant's staff privileges the hospital substantially departed from the provisions of its own bylaws. McElhinney v. William Booth Memorial Hospital, 544 S.W.2d 216 (Ky. 1977); Berberian v. Lancaster Osteopathic Hospital Asso., 395 Pa. 257, 149 A.2d 456 (1959); Joseph v. Passaic Hospital Asso., 26 N.J. 557, 141 A.2d 18 (1958).
See also the excellent analysis by Justice Kobayashi in Silver v. Castle Memorial Hospital, 53 Hawaii 475, 497 P.2d 564, 569-72 (Hawaii 1972), of the necessity for responsible exercise of the power vested in hospital officials and the suggested requirements of procedural due process in connection with appointment and reappointment to the medical staff.
[7] We could not affirm, with any degree of logic, the dismissal with prejudice of Count IV, which is the only count which seeks compensatory damages pursuant to section 395.065(2), and leave appellant with a claim only for punitive damages in Count V. A judgment for punitive damages alone, without compensatory or nominal damages, cannot stand. See Hauser Motor Co. v. Byrd, 377 So.2d 773 (Fla. 4th DCA 1979); and Raffa v. Dania Bank, 372 So.2d 1173 (Fla. 4th DCA 1979). Standing alone, Count V is defective and a verdict thereon would be "fundamentally improper." See American Motorcycle Inst., Inc. v. Mitchell, 380 So.2d 452, 454 (Fla. 5th DCA 1980).
[8] The last sentence of Florida Rule of Civil Procedure 1.110(b) provides:

Every complaint shall be considered to pray for general relief.