497 So.2d 1261 (1986)
Robert F. LAWLER, M.D., and Robert F. Lawler, M.D., P.A., Appellants,
v.
EUGENE WUESTHOFF MEMORIAL HOSPITAL ASSOCIATION, Etc., et al., Appellees.
No. 85-887.
District Court of Appeal of Florida, Fifth District.
October 16, 1986.
Rehearings Denied November 26, 1986.
*1262 Joe Teague Caruso, Merritt Island, and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, and Edna L. Caruso, P.A., West Palm Beach, for appellants.
Marcia C. Tabak, of Anderson and Hurt, P.A., Orlando, for appellees Wuesthoff, Spielvogel, Brewer, Harris, D'Albora, King & Houser.
Emil C. Marquardt, Jr., of McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, for appellee Lovering.
SHARP, Judge.
Robert E. Lawler, M.D. and Robert E. Lawler, M.D., P.A., appeal from the trial court's dismissal of their second amended complaint against Eugene Wuesthoff Memorial Hospital Association, the members *1263 of its board of trustees and the Hospital's attorney. The suit arose out of the Hospital's termination of Dr. Lawler's staff privileges at the Hospital. We affirm in part; and reverse in part.
Dr. Lawler, a radiologist, was on the staff at the Hospital since 1970. His Professional Association operates the only radiological laboratory in Rockledge, Florida, other than the one at the Hospital. In March of 1984, Dr. Lawler's staff privileges were terminated. He alleged in his pleadings this action was taken maliciously, and in violation of the Hospital's By-Laws and section 395.065, Florida Statutes (1981).
We agree that the trial court was correct in dismissing for failure to state a cause of action Count I (conspiracy to interfere and interference with an advantageous business relationship), Count II (combination or conspiracy in restraint or trade),[1] Count III (conspiracy and attempt to monopolize),[2] and Count IV (deprivation of rights under color of law).[3] Regarding the allegations in Count I, the only act complained of as wrongfully taken by the appellees was the termination of Dr. Lawler's staff privileges. The business relationships allegedly damaged were Dr. Lawler's relationships with his patients and other doctors in the community.[4] An essential element of a claim for intentional interference with an advantageous business relationship is that the interference be both direct and intentional. Rosa v. Florida Coast Bank, 484 So.2d 57 (Fla. 4th DCA 1986); Ethyl Corp. v. Balter, 386 So.2d 1220 (Fla. 3rd DCA 1980), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). The complaint failed to allege direct interference by the appellees with the doctor/patient, doctor/doctor relationships.[5] Clearly, the alleged interference with these relationships was only an indirect consequence of the termination of Dr. Lawler's staff privileges. Cf., 4 Restatement (Second) of Torts § 766C (1979).
We also think the allegations were insufficient to state a cause of action of conspiracy under Counts I, II, and III because all of the alleged conspirators were, in one form or another, the agents or actors for the Hospital. Termination of Dr. Lawler's staff privileges was an act which had to be done by the defendants as a group, acting for the Hospital. Therefore, there was no additional separate individual with whom the Hospital could have conspired. Buckner v. Lower Florida Keys Hospital District, 403 So.2d 1025 (Fla. 3rd DCA 1981), review denied, 412 So.2d 463 (Fla. 1982); Jacksonville American Publishing Co. v. Jacksonville Paper Co., 143 Fla. 835, 197 So. 672 (1940). In addition, Count III fails to include facts to support the allegation of attempt.
Finally, we uphold the dismissal of Count IV on the grounds of res judicata. It is virtually identical with appellant's amended complaint filed in the federal court which was dismissed on April 17, 1984 for failing to "sufficiently allege state action, in that no direct participation by any governmental entity in the personnel decision at issue is pled... ." This order was not appealed, and it therefore adjudicated the merits of that cause of action. Robinson v. Federal National Mortgage Association, 673 F.2d 1247 (11th Cir.1982); see also Fla.R.Civ.P. 1.420(b).
However, we think Dr. Lawler sufficiently alleged a cause of action against appellees for damages for breach of contract in failing to follow the Hospital's By-Laws (Count V), and for injunctive relief (Count VI). A copy of the By-Laws were not attached to the complaint. Apparently, they were already in the possession of the *1264 appellees, and appellees failed to urge this failing as a ground to dismiss. We therefore assume the accuracy of Dr. Lawler's allegations that in terminating his staff privileges, the Hospital failed to follow its own By-Laws. See Price v. Morgan, 436 So.2d 1116 (Fla. 5th DCA 1983), review denied, 447 So.2d 887 (Fla. 1984).
Breach of a Hospital's By-Laws in terminating a doctor's staff privileges is a sufficient basis upon which to grant compensatory as well as injunctive relief.[6] The majority view is that a Hospital's By-Laws, when approved and adopted by the governing board, become a binding and enforceable contract between the Hospital and the physicians comprising the medical staff.[7]
Further, Dr. Lawler alleged that his staff privileges were terminated in violation of Chapter 395, Florida Statutes, the regulations of the Joint Commission on Accreditation of Hospitals in Florida, and the Rules of the Department of Health and Rehabilitative Services of Florida. The termination allegedly was accomplished without adequate notice to Dr. Lawler, without an opportunity to defend and without a fair hearing before an impartial body.
Section 395.065, Florida Statutes (1981) provided:
(1) The medical staff of any hospital licensed pursuant to this chapter is authorized to suspend, deny, revoke, or curtail the staff privileges of any staff member for good cause, which shall include, but not be limited to:
(a) Incompetence.
(b) Neglience.
(c) Being found an habitual user of intoxicants or drugs to the extent that the physician is deemed dangerous to himself or others.
(d) Being found liable by a court of competent jurisdiction for medical malpractice.
However, the procedures for such actions shall comply with the standards outlined by the Joint Commission of Accreditation of Hospitals and the Principles of Participation in the Federal Health Insurance Program for the Aged.
(2) There shall be no liability on the part of, and no cause of action of any nature shall arise against, any hospital, hospital medical staff, or hospital disciplinary body or its agents or employees for any action taken in good faith and without malice in carrying out the provisions of this section.
One of the primary purposes of this statute, repealed in 1982 but continued as 395.0115 substantially in its original form, was to immunize hospital review boards from liability for denying or revoking staff privileges for doctors, if they act without malice and in conformity with their By-Laws and those standards set forth in the statute.[8] However, another purpose was to require that both private and public hospitals handle staff privileges in conformity with basic fairness and due process.[9]
It cannot be seriously questioned that the loss of staff privileges for a doctor at a hospital is a serious disadvantage to his or her ability to continue to practice in the community[10]  particularaly as in this case where there are no other nearby hospitals. The loss of staff privileges equates to loss of patients and ability to practice in this doctor's specialty  radiology. Such a loss *1265 or injury is difficult to measure, and therefore, in our view, injunctive relief may be appropriate.[11]
For the reasons stated herein, this cause is
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
UPCHURCH, C.J., and COWART, J., concur.
NOTES
[1] §§ 542.18 & 542.22, Fla. Stat. (1981).
[2] §§ 542.19 & 542.22, Fla. Stat. (1981).
[3] 42 U.S.C. § 1983.
[4] Compare Buckner v. Lower Florida Keys Hospital District, 403 So.2d 1025 (Fla. 3rd DCA 1981), review denied, 412 So.2d 463 (Fla. 1982).
[5] Compare American Medical International, Inc. v. Scheller, 462 So.2d 1 (Fla. 4th DCA 1984), review denied, 471 So.2d 44 (Fla. 1985).
[6] See Carida v. Holy Cross Hospital, Inc., 427 So.2d 803 (Fla. 4th DCA 1983); Margolin v. Morton F. Plant Hospital Ass'n, Inc., 348 So.2d 57 (Fla. 2d DCA 1977); Palm Beach-Martin County Medical Center, Inc. v. Panaro, 431 So.2d 1023 (Fla. 4th DCA 1983).
[7] See McElhinney v. William Booth Memorial Hospital, 544 S.W.2d 216 (Ky. 1976); Berberian v. Lancaster Osteopathic Hospital Ass'n, Inc., 395 Pa. 257, 149 A.2d 456 (1959); Palm Beach-Martin County Medical Center, Inc.; cf. Elbadramany v. Stanley, 490 So.2d 964 (Fla. 5th DCA 1986).
[8] Buckner.
[9] Katheder, The Medical Staff Privileges Problem In Florida, 12 Fla.St.U.L.Rev. 339, 352 (1984); Carida.
[10] Maxwell, Computing Lost Future Earnings in Light of Jones & Laughlin Steel Corp. v. Pfeifer, 12 Fla.St.U.L.Rev. 375, 379 (1984).
[11] Berberian; Palm Beach-Martin County Medical Center, Inc.