Kennon H. HAGER, M.D., Plaintiff,

v.

VENICE HOSPITAL, INC., Englewood Community Hospital, Inc., Radiology Associates of Venice & Englewood, P.A., Charles J. Savoca, and Eric M. Vihlen, Defendants.

No. 94–831–CIV–T–17B.

United States District Court, M.D. Florida, Tampa Division.

Oct. 30, 1996.

**1532**

Elaine Lucas, Jacksonville, FL, Donald W. Weidner, Rebecca Nikirk Zima, Donald W. Weidner, P.A., Jacksonville, FL, Robert J. Winicki, Winicki & Nuland Law Firm, Jacksonville, FL, for plaintiff.

Stephen Guy Brannan, Richard Roger Garland, George Hunter Gibbons, Dickinson, Gibbons, Shields, Partridge, Dahlgren & Collins, P.A., Sarasota, FL, for Venice Hospital.

William Eddins Partridge, Lutz, Webb, Partridge & Bobo, P.A., Sarasota, FL, for Englewood Community Hospital.

### ORDER

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following motions, responses, and related documents:

1. Plaintiff Kennon H. Hager, M.D.'s Second Amended Complaint and Demand for Jury Trial (Dkt. 58).

2. Dispositive Motion for Summary Judgment or Judgment as a Matter of Law of Defendant Venice Hospital, Inc. (Dkt. 97).

3. Memorandum of Law in Support of Dispositive Motion for Judgment of Defendant Venice Hospital, Inc. (Dkt. 98).

4. Englewood Community Hospital's Dispositive Motion for Final Summary Judgment (Dkt. 92).

5. Memorandum of Law in Support of Defendant Englewood Community Hospital's Motion for Summary Judgment (Dkt. 93).

6. Affidavit of Barry C. Harris (Dkt. 100).

7. Motion for Summary Judgment, or in the Alternative, for Judgment as a Matter of Law Pursuant to Rule 50 of Defendants Radiology Associates, Savoca and Vihlen (Dkt. 103).

8. Plaintiff's Opposition to Defendants' Motions for Summary Judgment and for Judgment as a Matter of Law (Dkt. 108).

### FACTUAL BACKGROUND

This matter is a state law tort case based on diversity of citizenship pursuant to 28 U.S.C. § 1332. On May 20, 1994, Plaintiff Kennon H. Hager, M.D. ("Hager") filed an eleven-count complaint against five Defendants: Venice Hospital, Inc. ("Venice"), Englewood Community Hospital, Inc. ("Englewood"), Radiology Associates of Venice and Englewood, P.A. ("RAVE"), Charles J. Savoca ("Savoca"), an officer and director of RAVE, and Eric M. Vihlen ("Vihlen"), also an officer and director of RAVE, alleging breach of bylaws contract, tortious violation of bylaws, tortious interference with contracts, tortious interference with business relationships, battery, defamation, intentional infliction of emotional distress, conspiracy, and fraud. Hager requested a jury trial and money damages. Hager later amended his complaint to include three additional counts for illegal boycott and restraint of trade against all five Defendants.

The following facts are asserted and are relevant to the issues before the court. Hager is a medical doctor and is trained as a radiologist. Hager moved his radiology practice to the Venice/Englewood area in July, 1990. At that time, Hager joined RAVE, which owns outpatient radiology centers in Venice and Englewood. Hager also obtained medical staff privileges and radiology privileges at Venice and Englewood. In August of 1991, Hager, claiming that RAVE and Savoca had intentionally misrepresented to Hager the terms under which he could buy into RAVE, informed RAVE that he intended to leave his position with RAVE. In

October of 1991, RAVE obtained an exclusive contract for radiology services at Venice (the "Venice contract"). Hager claims that the Venice contract effectively prevented him from practicing radiology at Venice. Additionally, Hager claims that Venice violated the due process provisions of its medical staff bylaws, which created contractual obligations between Venice and Hager, by failing to conduct any notice or hearing procedure before the Venice contract was implemented.

Thereafter, Hager moved his practice to Englewood, where he shared radiology privileges with RAVE. In March of 1992, RAVE obtained an exclusive contract for radiology services at Englewood. As he did against Venice, Hager claims that the Englewood contract effectively prevented him from practicing radiology at Englewood, and that Englewood violated the due process provisions of its medical staff bylaws, which created contractual obligations between Englewood and Hager, by failing to provide notice or a hearing.

### SUMMARY JUDGMENT STANDARDS

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Furthermore, a complete failure of proof concerning an essential element of the plaintiff's case renders all other facts immaterial. *Id.* at 324, 106 S.Ct. at 2553. The movant can demonstrate that the plaintiff's evidence is insufficient to establish his case, or an essential element thereof, by either affirmatively demonstrating the plaintiff's lack of evidence or by reviewing for the court the record to show such lack of evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir.1994). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

Evidence presented in opposition to the motion for summary judgment, and all factual inferences arising from it, must be viewed in the light most favorable to the plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. *See* Fed.R.Civ.P. 56(e); *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). To overcome a motion for summary judgment, the non-moving party must either point to evidence in the record or present additional factual evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Hammer*, 20 F.3d at 1141. The existence of a scintilla of evidence in support of the Plaintiff's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511.

### DISCUSSION

At the outset, the Court notes that Defendant Englewood Community Hospital has made an Offer of Judgment to Plaintiff, which Plaintiff has accepted. The Court **denies** the Motion for Summary Judgment (Dkt. 92) of Englewood Community Hospital as moot, and directs the Clerk to enter a final judgment in favor of Plaintiff pursuant to the Defendant's Offer of Judgment (Dkts. 111, 112).

### COUNT I

In Count I, Hager alleges that Venice breached the bylaws contract between himself and Venice. Hager claims that Venice violated these bylaws by failing to conduct

any due process hearing before it terminated Hager's staff and radiology privileges at Venice. Venice contends that Hager's staff and radiology privileges were not revoked as a result of the Venice contract, and, thus, Hager was not entitled to a hearing (Dkt. 98).

Other courts have found that a hospital does not breach a physician's bylaws contract by terminating his staff privileges without a hearing when the bylaws only provide for a hearing when the hospital board takes corrective action, and the physician's privileges were terminated as the result of an exclusive contract, not corrective action. *See Bloom v. Hennepin County,* 783 F.Supp. 418, 433–434 (D.Minn.1992). It has also been held, however, that a hospital breached its bylaws by refusing to give a radiologist access to its equipment and staff without providing fair hearing after the hospital entered into an exclusive contract with another radiology service provider. *Lewisburg Community Hospital v. Alfredson,* 805 S.W.2d 756 (Tenn. 1991).

In the instant case, Hager has not been denied access to equipment or staff at Venice. Hager's status as a staff physician was changed, but it was still possible for Hager to exercise clinical privileges at Venice through physician referrals. In fact, Hager's staff privileges were affected only as an incidental consequence of the exclusive contract entered into between RAVE and Venice. Furthermore, the Venice bylaws provide that a physician who fails to request a hearing to which he is entitled by the bylaws waives the right to such a hearing. Thus, even if Hager was entitled to a hearing, Hager himself has testified that he never requested a hearing after Venice entered into the exclusive contract with RAVE. The Court **grants** summary judgment to Venice Hospital, Inc. on Count I.

### COUNT II

This Count is directed solely to Defendant Englewood Community Hospital. Discussion of Count II is therefore not necessary.

### COUNT III

■ In Counts III and IV, Hager alleges tortious violation of bylaws by Venice, RAVE, Savoca and Vihlen. Defendant Venice correctly states that under Florida law, the economic loss doctrine bars tort recovery for contract claims which involve no injury to person or property. *Hoseline, Inc. v. U.S.A. Diversified Products, Inc.,* 40 F.3d 1198 (11th Cir.1994). RAVE, Savoca and Vihlen rely on Venice's Motion and Memorandum as to the Counts they have in common with Venice Hospital, Inc. (Dkt. 103). Plaintiff Hager cannot recover in tort for the purely contractual economic damages. The Court **grants** summary judgment to Defendants on Count III.

### COUNT IV

■ In Count IV, Hager alleges tortious violation of bylaws by RAVE, Savoca and Vihlen. As in Count III, the economic loss doctrine bars tort recovery for contract claims. The Court notes that in order to recover for a claim in tort derived from the same conduct which led to the breach of contract, an injury separate from the one suffered from the contract breach must occur. *Strickland–Collins Constr. v. Barnett Bank of Naples,* 545 So.2d 476 (Fla. 2d DCA 1989). RAVE, Savoca, and Vihlen rely on Englewood's Motion and Memorandum as to the Counts they have in common with Englewood (Dkt. 103). As in Count III, the Court **grants** summary judgment to Defendants Rave, Savoca and Vihlen on Count IV.

### COUNT V

In Count V, Hager alleges tortious interference with his contracts with Venice and Englewood by RAVE, Savoca and Vihlen. These three Defendants assert that Hager has presented no evidence that he had any contracts with either Venice or Englewood, "save his staff privileges via hospital bylaws" (Dkt. 103).

■ Hospital bylaws, when approved and adopted by the governing board, become a binding and enforceable contract between the hospital and the physicians comprising the medical staff. *Lawler v. Eugene Wuesthoff Memorial Hospital,* 497 So.2d 1261, 1264 (Fla. 5th DCA 1986). The elements of a cause of action for tortious interference with

a contractual relationship are: 1) the existence of a contract; 2) the defendant's knowledge of the contract; 3) the defendant's intentional procurement of the contract's breach; 4) absence of any justification or privilege; and 5) damages resulting from the breach. *McKinney–Green, Inc. v. Davis,* 606 So.2d 393 (Fla. 1st DCA 1992). As noted above in Counts I and II, Plaintiff has not presented sufficient evidence that Plaintiff's contracts with either Venice or Englewood have been breached. Further, hospitals have a right to enter into exclusive service provider contracts. *See e.g., Horgan v. South Broward Hospital Dist.,* 477 So.2d 617 (Fla. 4th DCA 1985); *Hospital Corp. of Lake Worth v. Romaguera,* 511 So.2d 559 (Fla. 4th DCA 1987). The Court **grants** summary judgment to Defendants RAVE, Savoca and Vihlen on Count V.

### COUNT VI

██ In Count VI, Hager alleges tortious interference with business relationships by Venice, Englewood, RAVE, Savoca, and Vihlen. An essential element of a claim for intentional interference with a business relationship is that the interference be both direct and intentional. *Lawler v. Eugene Wuesthoff Memorial Hospital,* 497 So.2d 1261, 1264 (Fla. 5th DCA 1986). In *Lawler,* the alleged interference with the doctor/doctor and doctor/patient relationships were clearly only an indirect result of the termination of the plaintiff's staff privileges. *Lawler* at 1263. In the instant case, however, Hager has alleged that there was direct interference, beyond that caused when the hospitals entered into exclusive contracts with RAVE, on the part of both Venice and Englewood with his doctor/doctor and doctor/patient relationships. Hager alleges that staff members of both Venice and Englewood acted to hinder his professional relationships in the Venice/Englewood area and with potential future relationships (Dkt. 58; Dkt. 108). The Court **denies** summary judgment to Venice Hospital, Inc. on Count VI due to the presence of material factual disputes.

### COUNT VII

██ In Count VII, Hager alleges battery against Savoca. There is no evidence of any injury to Plaintiff, or of any medical expenses incurred due to the alleged battery, which are requirements for recovery in the relevant case law. *See Food Fair Stores, Inc. v. Morgan,* 338 So.2d 89 (Fla. 2d DCA 1976); *Glickstein v. Setzer,* 78 So.2d 374 (Fla.1955); *Anderson v. Maddox,* 65 So.2d 299 (Fla. 1953). In addition, Hager states that he has decided not to pursue a remedy against Savoca for Count VII (Dkt. 108). The Court **grants** summary judgment to Defendant Savoca on Count VII.

### COUNT VIII

In Count VIII, Plaintiff alleges defamation by Venice, Englewood, RAVE, Savoca, and Vihlen. There is an issue of fact as to when publication of the alleged defamatory statements occurred. Therefore, the Court finds that Hager's Count VIII is not barred by the two-year statute of limitations provided in Section 95.11(4)(g), Fla.Stat. (1995).

██ The elements that a plaintiff must prove in a defamation case are that the defendant published a false statement, that the statement was communicated to a third party, and that the plaintiff suffered damages as a result of the publication. *Shaw v. R.J. Reynolds,* 818 F.Supp. 1539, 1541 (M.D.Fla. 1993) (citing *Baker v. McDonald's Corp.,* 686 F.Supp. 1474 (S.D.Fla.1987), *aff'd,* 865 F.2d 1272 (11th Cir.1988)); *Axelrod v. Califano,* 357 So.2d 1048 (Fla. 1st DCA 1978).

██ In his allegations against Venice, Hager has not been able to identify the administrative personnel at Venice who allegedly published to third persons that Hager was no longer in practice, had moved away, or had died. The only evidence Hager has presented is hearsay evidence from Mr. Byrnes, a representative of Siemens Medical Equipment Company, whom Hager encountered at a meeting some time after the statements were allegedly made. Mr. Byrnes' testimony is offered as proof that Venice in fact published a defamatory statement to third parties. Venice asserts, through the testimony of the CEO of Venice, that no such statements were made. Byrnes' statements are pure hearsay and the statements do not

create an issue of material fact needed to defeat a motion for summary judgment. *See Bush v. Barnett Bank of Pinellas County,* 916 F.Supp. 1244, 1254–56 (M.D.Fla.1996).

Plaintiff's allegations against Savoca and RAVE are based on statements made to a recruiter regarding a radiology practice in Miami, and to Brigham and Women's Hospital at Harvard University, where Hager had applied for a fellowship. Hager claims that the statements caused the Miami practice not to hire him and caused Brigham and Women's Hospital to deny his fellowship application.

 Florida law recognizes a qualified privilege for information communicated by an employer to a prospective employer of a former employee. *Boehm v. American Bankers Ins. Group,* 557 So.2d 91 (Fla. 3d DCA 1990). The question of whether publication of a false statement on a certain occasion is subject to this qualified privilege is a question of law to be resolved by the Court where there is no dispute as to the circumstances surrounding the publication. *Nodar v. Galbreath,* 462 So.2d 803, 810 (Fla.1984); *Hartley & Parker, Inc. v. Copeland,* 51 So.2d 789 (Fla.1951).

 In both instances, the statements in question were published by Savoca in response to legitimate inquiries for information about Hager in his professional capacity and were made in good faith. Hager has failed to show that Savoca acted with the "ill will, hostility and evil intent to defame" required to establish express malice, or that Savoca's primary motive in publishing the information was to harm Hager. The Court **grants** summary judgment to Savoca and RAVE on Count VIII.

 Hager's allegations against Vihlen and RAVE are based on a statement allegedly made by Vihlen that Hager could not read MRI films. Hager has not identified any third persons to whom the allegedly damaging statements were made, nor has he shown that he suffered any damages due to the statements. Therefore, the Court **grants** summary judgment to RAVE and Vihlen on Count VIII.

### COUNT IX

 In Count IX, Hager alleges the independent tort of conspiracy by Venice, Englewood, RAVE, Savoca, and Vihlen. The gist of a civil conspiracy is not the conspiracy itself, but the civil wrong which is done through the conspiracy that results in damage to the plaintiff. An act which constitutes no ground of action against one person cannot be made the basis of a civil action for conspiracy. *Liappas v. Augoustis,* 47 So.2d 582 (Fla.1950). However, an independent tort of conspiracy is actionable when a plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual could not possess. *Buckner v. Lower Fla. Keys Hospital Dist.,* 403 So.2d 1025, 1029 (Fla. 3d DCA 1981). This independent tort of conspiracy has been labeled an economic boycott. *American Diversified Ins. Services, Inc. v. Union Fidelity Life Ins. Co.,* 439 So.2d 904, 906 (Fla. 2d DCA 1983).

 Beyond citing cases which support the proposition that a peculiar power of coercion possessed by conspirators as a group can create an independent tort of conspiracy, Hager has come forward with no evidence that Defendants either possessed such a peculiar power or that they exercised it. Entering into exclusive provider contracts is not in itself evidence of the existence or use of such coercive power. *See e.g., Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984); *Hospital Corp. of Lake Worth v. Romaguera,* 511 So.2d 559 (Fla. 4th DCA 1987). The Court **grants** summary judgment in favor of Defendants on Count IX.

### COUNT X

 In Count X, Hager alleges fraud against Rave and Savoca. Hager claims that Savoca and RAVE, individually and jointly, caused him to relocate his radiology practice to the Venice/Englewood area in reliance on their intentional misrepresentations. RAVE and Savoca correctly point out that, under Florida's Statute of Frauds, Section 725.01, Fla.Stat. (1995), all contracts that are not to be performed within one year are not enforceable unless in writing and signed by the

party against whom enforcement is sought. The rule in Florida is that the statute of frauds may not be avoided by a suit for fraud based on oral representations. *Ostman v. Lawn,* 305 So.2d 871, 873 (Fla. 3d DCA 1974). There is no written contract to support Hager's allegations of fraud. The Court **grants** summary judgment to Defendants RAVE and Savoca on Count X.

### THE ANTITRUST COUNTS

The remaining counts (Count XI, Count XII, Count XIII, Count XIV) allege causes of action for illegal boycott, restraint of trade and monopoly by Venice, Englewood, RAVE, Savoca, and Vihlen pursuant to sections 542.18, 542.19, and 542.22, Fla.Stat. (1995). *Levine v. Central Fla. Medical Affiliates, Inc.,* 72 F.3d 1538, 1556 n. 20 (11th Cir.1996). Florida's statute regulating combinations in restraint of trade provides: "It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes." Fla.Stat. § 542.32 (1995). *See All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc.,* 887 F.2d 1535, 1539 n. 1 (11th Cir.1989) (Tjoflat, J., concurring); *Ad–Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.,* 849 F.2d 1336, 1340 (11th Cir.1987) ("In applying this provision, the Florida courts held that the Florida legislature has, in effect, adopted as the law of Florida the body of anti-trust law developed by the federal courts under the Sherman Act.")

■ Courts throughout the country have interpreted the federal antitrust laws as allowing hospitals to enter into exclusive service provider contracts. A staffing decision at a single hospital based on an exclusive contract is not violative of antitrust laws. *BCB Anesthesia Care v. Passavant Memorial Area Hospital,* 36 F.3d 664 (7th Cir.1994). There is nothing patently anticompetitive about a hospital choosing one staffing pattern over another or in restricting the staffing to some rather than many, or all. *Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404, 1412 (9th Cir.1991). A hospital has an unquestioned right to exercise some control over the identity and number to whom it accords staff privileges. *Jefferson Parish Hospital,* 466 U.S. at 30, 104 S.Ct. at 1567–68.

Florida courts, following Sherman Antitrust Act precedent, have clearly recognized that hospitals have a right to enter into exclusive service provider contracts. In *Horgan v. South Broward Hospital Dist.,* 477 So.2d 617 (Fla. 4th DCA 1985), the court upheld a hospital's decision to operate its catheterization facility as a "closed lab." Florida courts have also held that "it is standard practice to award exclusive franchises to perform all of the hospital's work, on a contract basis, in such areas as pathology, radiology, and anesthesiology." *Hospital Corp. of Lake Worth v. Romaguera,* 511 So.2d 559 (Fla. 4th DCA 1987).

■ In *Todorov v. DCH Healthcare Authority,* 921 F.2d 1438 (11th Cir.1991), the court held that a private antitrust plaintiff must show that his or her injuries coincide with the public detriment tending to result from the alleged violation. Antitrust laws were intended to protect competition, not competitors. Thus, a plaintiff must plead and prove the injury they have suffered was caused by anticompetitive conduct and is the type of injury the antitrust laws were intended to protect. *Id.* at 1449.

■ Plaintiff has not shown that his injuries are the equivalent of an injury to competition in the relevant market. In his affidavit, Barry C. Harris concludes that Hager fails to distinguish between harm to competition and harm to a particular competitor (Dkt. 100). Harris further states that the exclusive contracts entered into between Venice and Rave and between Englewood and RAVE have not operated to either enhance the parties' market power, deprive patients of alternative facilities, or otherwise act in a detrimental manner in the Venice/Englewood market area (Dkt. 100).

■ Finally, as Venice correctly notes, to prove an antitrust conspiracy, a plaintiff must show an agreement between two or more persons or entities and "unity of purpose or a common design or understanding or a meeting of minds in an unlawful arrangement." *Monsanto Co. v. Spray–Rite*

**1538**

*Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); *Todorov,* 921 F.2d at 1455–56. The *Todorov* court further explained the burden a plaintiff has in proving antitrust conspiracy:

[T]he mere opportunity to conspire among antitrust defendants does not, standing alone, permit the inference of conspiracy. [Citation omitted] Thus, when the defendant puts forth a plausible, procompetitive explanation for his actions, we will not be quick to infer, from circumstantial evidence, that a violation of the antitrust laws has occurred; the plaintiff must produce more probative evidence that the law has been violated. [Footnote omitted]

Hager has not put forth more probative evidence that the defendants contracted, combined or conspired to illegally boycott him, restrain trade, or monopolize the Venice/Englewood market. The Court grants summary judgment to Defendants on the antitrust claims contained in Count XI, Count XII, Count XIII, and Count XIV. Accordingly, it is

**ORDERED** that the Motion for Final Summary Judgment (Dkt. 92) of Defendant Englewood Community Hospital Inc. is **denied** as moot; it is further

**ORDERED** that the Dispositive Motion for Summary Judgment or Judgment as a Matter of Law of Defendant Venice Hospital, Inc. (Dkt. 97), is **granted** in part and **denied** in part. The Court **denies** the Motion as to Count VI. The Court **grants** the Motion as to all other Counts. It is further

**ORDERED** that the Motion for Summary Judgment, or in the Alternative, for Judgment as a Matter of Law Pursuant to Rule 50 of Defendant Radiology Associates, Savoca and Vihlen (Dkt. 103) is **granted.**