918 So.2d 323 (2005)
NAPLES COMMUNITY HOSPITAL, INC., Appellant,
v.
F. Desmond HUSSEY, III, Appellee.
No. 2D05-1648.
District Court of Appeal of Florida, Second District.
November 9, 2005.
Rehearing Denied January 19, 2006.
*324 Lawrence A. Farese of Robins, Kaplan, Miller & Ciresi L.L.P., Naples, for Appellant.
John G. Vega of John G. Vega, P.A., Naples, for Appellee.
VILLANTI, Judge.
The trial court found that Naples Community Hospital, Inc. (the Hospital), violated the express provisions of its Bylaws when it refused to allow Dr. F. Desmond Hussey, III, to reapply for clinical privileges to provide pain management services at its Naples Community Hospital because it entered into an exclusive contract with another provider. The trial court entered its "Order on Cross-Motions for Summary Judgment on Count II of the Amended Complaint," granting permanent injunctive relief by requiring the Hospital to give Dr. Hussey a hearing as provided by its Bylaws and to reinstate his privileges pending the outcome of the hearing. The Hospital appeals. We agree with the trial court that the Bylaws formed an enforceable contract between Dr. Hussey and the Hospital. However, these Bylaws did not require the Hospital to give Dr. Hussey a hearing when it decided not to renew his clinical privileges because of its business decision to enter into an exclusive contract with another provider of pain management services. Therefore, we reverse the trial court's order granting injunctive relief.
The Hospital is a not-for-profit corporation that owns and operates Naples Community Hospital and other medical facilities. Dr. Hussey is a licensed physician who specializes in neurology and interventional pain management. He has been a member of the Hospital staff in the Department of Neurology since June 1995. He also had clinical privileges to provide pain management services. But, on November 1, 1996, the Hospital's parent company, Community Health Care, Inc., entered into an exclusive contract with another provider, Collier Anesthesia, P.A. (Collier). The exclusive contract gave Collier the exclusive right to provide anesthetic and pain management services at the Hospital. In 1997, Dr. Hussey's clinical *325 privileges in pain management at the Hospital's facilities expired. He reapplied for clinical privileges in pain management, but the Hospital denied his application for reappointment without a hearing.
Following the Hospital's denial of his application, Dr. Hussey filed suit against the Hospital. In his complaint, Dr. Hussey included claims for both injunctive relief and damages. Count I of the complaint asked for temporary and permanent injunctive relief as a remedy for the Hospital's breach of its Bylaws. The Hospital and Dr. Hussey both filed motions for summary judgment. Dr. Hussey's motion, "Motion for Summary Judgment of Liability on Count I: Breach of Contract," specifically requested neither damages nor injunctive relief, but a judgment "on the issue of liability"essentially declaratory relief determining that the Hospital had breached its contract with Dr. Hussey as a matter of law. The trial court granted partial summary judgment in favor of Dr. Hussey, concluding that the Hospital's Bylaws required a hearing when the Hospital refused to reappoint Dr. Hussey's clinical privileges. Based on its conclusion, the court granted injunctive relief, requiring the Hospital to give Dr. Hussey a hearing and allow him to exercise clinical privileges until the hearing.[1] The Hospital appeals.
This court has jurisdiction to review the trial court's order as an appeal from a nonfinal order granting injunctive relief. Fla. R.App. P. 9.130(a)(3)(B). Because the trial court's grant of injunctive relief was based on its interpretation of the Hospital's Bylaws, a contract, we apply a de novo standard of review. See Kaplan v. Bayer, 782 So.2d 417, 419 (Fla. 2d DCA 2001).
Florida has adopted the majority view that hospital bylaws become a binding and enforceable contract between a hospital and its medical staff when adopted by a hospital's governing board. Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n, 497 So.2d 1261, 1264 (Fla. 5th DCA 1986); see also Hosp. Corp. of Lake Worth v. Romaguera, 511 So.2d 559, 560 (Fla. 4th DCA 1986) (rejecting a hospital's argument that a bylaws amendment was not binding for lack of mutuality, stating that the hospital "did not execute the by-laws amendment out of gratuitous compassion for its contract physicians. On the contrary, the highly self-serving purpose, and therefore consideration, was to facilitate retention of the benefits bestowed upon it by the Joint Commission on Accreditation of Hospitals.").
Here, the Hospital's Bylaws included the "Medical Staff Bylaws," the "Medical Staff Rules & Regulations," and the "Medical Staff Policy on Appointment, Reappointment and Clinical Privileges." The Medical Staff Bylaws, Rules and Regulations, and Policy are contained in a single-volume manual. Although only the first section has the word "bylaws" in the title, all three sections collectively form the enforceable contract between the Hospital and its staff. On the very first page of the Medical Staff Policy, there is a definitions section in Article I, and the first statement in the definitions section says, "The following definitions shall apply to terms used in these bylaws." (Emphasis added.) Additionally, in Article XI of the Rules and Regulations, section (a) states that "[r]ules *326 and regulations shall have the same force and effect as the Medical Staff Bylaws and the Policy on Appointment, Reappointment, and Clinical Privileges"all three sections have equal force and effect. Accordingly, when we refer to the Hospital's Bylaws, we are referring to all three sections, not just the section entitled "Medical Staff Bylaws."
The Medical Staff Policy on Appointment, Reappointment and Clinical Privileges (the Policy) is the only section in the Bylaws that discusses the procedure for reapplying for clinical privileges at the Hospital. Having concluded that the Policy is part of the binding contract between the Hospital and Dr. Hussey, we turn to whether it included a right to a hearing. We conclude that it did not.
The Policy section sets forth the procedure for reappointment of clinical privileges in Article III. According to the Policy, the person seeking reappointment completes an application form and submits it to the Chief Executive Officer. The CEO sends the application to the Credentials Committee. The chairperson of each department transmits a number of reports, including recommendations for non-reappointment. The Credentials Committee reviews all information it has received and then makes a recommendation of its own. The Credentials Committee sends its report and recommendations to the Board of Directors. According to Article III, Part A, Section 6, if the Credentials Committee makes a recommendation that would entitle the applicant to a hearing, the CEO notifies the applicant and gives the applicant a hearing before forwarding the recommendation to the Board.
Generally, staff members reapplying for clinical privileges are subject to a process in which the chairperson of each department makes recommendations based on ethical behavior, competence, attendance and participation at staff meetings, compliance with bylaws and policies, behavior at the Hospital, use of the Hospital's facilities, ability, capacity to satisfactorily treat patients, satisfaction of continuing education requirements, other relevant findings from the Hospital's quality assessment activities, peer recommendations concerning skills, and board certification status. The Policy does not expressly state whether a staff member who is reapplying for clinical privileges in an area under an exclusive contract is subject to the same process of receiving recommendations based on their ethical behavior, competence, and other factors. However, because the Hospital would be denying renewal of such clinical privileges based on a business decision to enter into an exclusive contract, and not because of recommendations from department chairpersons, it would seem like a futile process. In fact, the entire hearing process, described in Article IV, Section B is based on the premise that a doctor's competence has been called into question and his or her reputation is at stake. The notice of hearing includes "a proposed list of witnesses who will give testimony or evidence in support of the Credentials Committee or the Board at the hearing" and "shall contain a concise statement of the practitioner's alleged acts or omissions, a list by number of specific patient records in question, and any other reasons or subject matter which form the basis for the adverse recommendation."
We cannot imagine how Dr. Hussey's hearing, if he were to get one, would proceed. There would be no statement of acts or omissions, no patients records, and no testimony casting doubt on his skillno accusations against which to defend himself. Ultimately, the decision of reappointment would fall to the Board of Directors of the Hospital, the very body that made *327 the business decision that adversely affected Dr. Hussey's clinical privileges at the Hospital. According to the Policy, the express purpose of a hearing "shall be to recommend a course of action to those acting for the hospital corporation." Here, those acting for the corporation have already entered into an exclusive contract with another provider, thus making the recommendation and hearing process useless. The hearing process described in the Bylaws clearly does not apply when a staff member is denied reappointment because of a business decision to enter into an exclusive contract with another provider.
Based on our reading of the Hospital's Bylaws, we cannot agree with the trial court's decision that Dr. Hussey was contractually entitled to a hearing. Accordingly, we reverse the trial court's order granting injunctive relief in favor of Dr. Hussey based on its conclusion that the Hospital breached its contract, and we remand for further proceedings.
Reversed and remanded.
NORTHCUTT and LaROSE, JJ., Concur.
NOTES
[1] The trial court granted permanent injunctive relief based on its decision on the merits that the Hospital breached its Bylaws. See Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n, 497 So.2d 1261, 1264 (Fla. 5th DCA 1986) ("Breach of a Hospital's By-Laws in terminating a doctor's staff privileges is a sufficient basis upon which to grant compensatory as well as injunctive relief.").