**LEWISBURG COMMUNITY HOSPITAL, INC. and Republic Health Corporation, Plaintiffs/Appellants,**

v.

**David ALFREDSON, M.D. and David Alfredson, M.D., P.C., Defendants/Appellees.**

Supreme Court of Tennessee, at Nashville.

March 4, 1991.

Richard A. Buerger, Jeffrey D. Moseley, Peterson & Buerger, Franklin, for plaintiffs/appellants.

Thomas W. Hardin, Hardin, Matthews, Ewing & Matthews, Columbia, for defendants/appellees.

Paul G. Gebhard, Barry Sullivan, Jeffrey T. Shaw, Jenner & Block, Chicago, Ill., Thomas W. Greeson, American College of Radiology, Reston, Va., Kirk B. Johnson, Edward B. Hirshfeld, Michael L. Ile, American Medical Ass'n, Chicago, Ill. for amici curiae.

## OPINION

ANDERSON, Justice.

This Court is asked to decide a question of first impression—whether medical staff bylaws constitute a contract between a hospital and a member of the medical staff.

The question arose when the the plaintiff, Dr. David Alfredson ("Alfredson"), filed this action against the defendant, Lewisburg Community Hospital ("Hospital"), because the Hospital terminated his contract to provide exclusive radiological services, and thereafter denied him access to the Hospital's equipment and support personnel. The Hospital maintained its medical staff bylaws did not constitute a contract with Alfredson; that it had not reduced his staff privileges; and that he was not entitled to a hearing. Alfredson argued the Hospital's bylaws constituted a contract, which it breached by reducing his clinical privileges without following the fair hearing procedures set out in the bylaws.

The Court of Appeals held that a hospital's bylaws are an integral part of its contractual relationship with the members of its medical staff, and that a medical staff member has a contractual right to require that the hospital follow its bylaws requiring it to provide a hearing when it takes an action which "significantly reduces a physician's clinical privileges."

We agree and hold that the Hospital's bylaws were an integral part of its contractual relationship with Alfredson, a member

of its medical staff, and that he had a contractual right to require the Hospital to follow its bylaws which, in this case, required it to provide hearings to physicians when the Hospital takes an action which "significantly reduces a physician's clinical privileges."

Because the Court of Appeals found the record deficient as to Alfredson's clinical privileges, it remanded the case to the trial court to determine the scope of the clinical privileges and whether the Hospital's action refusing Alfredson access to its staff and equipment "significantly reduced" his privileges. However, we find that the record describes Alfredson's clinical radiology privileges sufficiently for us to determine that the Hospital's action refusing him access to its staff and equipment "significantly reduced his privileges." Accordingly, we hold that the Hospital breached Dr. Alfredson's contract when it denied him a hearing under the Hospital bylaws.

## FACTUAL BACKGROUND

The plaintiff, Dr. David Alfredson, graduated from medical school in 1976. After completing a four-year internship and residency in radiology, he signed a contract in March of 1981 with Lewisburg Community Hospital to be the Hospital's exclusive provider of radiological services, conditioned upon his becoming a member of the Hospital's medical staff and obtaining the clinical privileges necessary to practice his specialty. The contract expressly stated that either party could cancel the exclusive arrangement by giving 90 days notice of termination to the other party, and that if the contract was terminated, Alfredson's medical staff membership and clinical privileges would be terminated as well. Alfredson was granted clinical privileges in radiology and became the sole provider of radiological services at the Hospital.

The ownership of the Hospital changed. Republic Health Corporation took control in January of 1983 and began negotiating a new exclusive radiology agreement with Alfredson sometime that year. By 1983 Alfredson had formed a professional corporation, through which he conducted his practice. He required, and the Hospital agreed, that the agreement be between his professional corporation and the Hospital. The Hospital also agreed to the deletion of the clause providing that Alfredson's clinical privileges would be automatically terminated if the radiology agreement was cancelled without cause. These demands were reflected in a new contract between Alfredson, on behalf of his professional corporation, and the Hospital effective February 1, 1984. The contract provided that it would be renewed automatically every year unless either party terminated the contract with 90 days advance written notice. The contract provided that David Alfredson, P.C. would be the "exclusive source of specialist services" required for the operation of the Hospital's radiology department. The contract specifically provided that termination without cause would not result in automatic termination of medical staff membership.[1]

Beginning in late November 1984, the Hospital and Alfredson had differences over the Hospital's new separate contract with another contractor for the provision of computerized tomography services (CAT scans). The legal dispute was resolved, and the Hospital, Alfredson, and the other contractor executed mutual covenants not to sue.

At least in part because of these differences, on October 3, 1985, the Hospital formally notified Alfredson that his exclusive radiology agreement would be terminated without cause after the 90–day time period set out in the contract. On January 1, 1986, the Hospital administrator instructed Alfredson to vacate his office by midnight, and also informed him that he would no longer have access to the Hospital's equipment and support personnel, because the Hospital had entered into a new exclusive radiology agreement with Radiology

---

**1.** "The concurrent termination" clause provided, in part, that:

However, termination without cause, as provided in section 6.3 above, shall not cause automatic termination of staff appointment for either contractor, his employees or subcontractors.

Services, Inc., a company owned, in part, by other physicians on the Hospital's medical staff. The Hospital also informed Alfredson that he remained an active member of the Hospital's medical staff. While Alfredson was allowed to attend medical staff meetings, the Hospital prohibited him from using its equipment and personnel and from charging any fees for reading and interpreting film taken on Hospital equipment. Alfredson remained in Lewisburg and attempted to establish an out-patient radiological practice, with limited success.

## PROCEDURAL HISTORY

In May 1986, Alfredson filed this litigation against the Hospital in the Marshall County Circuit Court, claiming his hospital clinical privileges had been reduced and alleging multiple theories of recovery. After discovery, both the Hospital and Alfredson moved for summary judgment. The trial court granted the Hospital's motion for summary judgment in its entirety. The Court of Appeals upheld the trial court's action as to most of Alfredson's claims, based on a finding that there was no promise of lifetime employment, on the covenant not to sue, on the termination of the exclusive radiology contract, and on the new exclusive radiology contract. However, the Court of Appeals vacated the trial court's summary judgment determination that the medical staff bylaws did not constitute a contract between the Hospital and Alfredson, and that Alfredson's medical staff appointment was separate from his clinical privileges. In addition, the Court of Appeals found genuine factual issues existed as to whether the Hospital significantly reduced Alfredson's clinical privileges by denying him access to its radiological equipment and staff, and held as a result that neither the Hospital nor Alfredson was entitled to judgment as a matter of law.

On appeal, the Hospital argues the Court of Appeals erred in partially vacating the trial court summary judgment in favor of the Hospital. It contends it was not required to follow its own fair hearing procedures because Alfredson's "medical staff privileges have not been curtailed"; that the medical staff bylaws do not constitute a contract between the Hospital and Alfredson; and that Alfredson's medical staff appointment was separate from his clinical privileges. Alfredson insists, on the other hand, that the Hospital had breached the radiology agreement and its own bylaws, which were a part of that agreement, by limiting his clinical privileges without following the bylaws' fair hearing procedure. He contends that, as a matter of law, the medical staff bylaws did constitute a contract between the Hospital and himself, and that his medical staff appointment was inseparable from his clinical privileges.

## JUDICIAL REVIEW

The Hospital first argues that its actions with respect to Dr. Alfredson were a business decision and that great deference must be given to business decisions of a private hospital, citing *Nashville Memorial Hospital, Inc. v. Binkley*, 534 S.W.2d 318 (Tenn.1976). The Hospital argues the decision to exclude a physician from the medical staff is a management decision within the discretion of the governing body, and that private hospitals may exclude licensed physicians from the hospital for any cause deemed sufficient by the governing body. Although the *Binkley* court states in dictum the general rule that private hospitals have a right to exclude licensed physicians for any cause deemed sufficient, *Binkley* qualified that general rule in racial discrimination cases by allowing a judicial review of the physician's tort conspiracy claim, saying:

> Everyone has the right to establish and conduct a lawful business or engage in a lawful profession, and is entitled to the protection of organized society, through its courts, whenever that right is unlawfully invaded. . . .

*Id.* at 321. When *Binkley* was decided by this Court, no administrative rules and regulations were in effect requiring hospital staff bylaws to contain fair hearing provisions to protect physicians from unfair or wrongful actions on the part of a hospital's

administrative body. Indeed, in *Binkley* there was no contention by the physician that the hospital had failed to follow fair hearing procedures required by its own by-laws or by general state law, as is present in this case. Nor is there any suggestion that the Court would have exempted such breaches of contract from judicial review.

The Hospital's argument ignores the fact that it made a business decision when it agreed to delete the automatic termination of Alfredson's clinical privileges from the 1984 exclusive radiology contract. Had it not made that business decision, Alfredson would have no claim for breach of contract.

We conclude that Hospital staffing decisions involving specialized medical and business considerations are entitled to deference from the courts; however, in the words of the Court of Appeals:

> Like any other legal entity, hospitals are capable of breaching contracts, committing torts, or violating others' constitutional or statutory rights. When they do, they are no less subject to the courts' jurisdiction than anyone else.

■ The substantive threshold issue in this case is whether or not the Hospital's bylaws are a contract with Alfredson, as a member of its medical staff. Although there is a split of authority between the several states, we agree with the Court of Appeals that the better-reasoned view is that a hospital's bylaws are an integral part of its contractual relationship with the members of its medical staff. *See, e.g., Gianetti v. Norwalk Hosp.*, 211 Conn. 51, 64, 557 A.2d 1249, 1255 (1989) (hospital bylaws are enforceable part of contract between physician and hospital); *Pariser v. Christian Health Care Sys., Inc.*, 816 F.2d 1248, 1251 (8th Cir.1987) (under Illinois law, hospital's bylaws are an enforceable part of contract between hospital and physician with privileges, and court will annul revocation of privileges not accomplished in accordance with bylaws); *Posner v. The Lankenau Hosp.*, 645 F.Supp. 1102, 1106 (E.D.Pa.1986) (under Pennsylvania law, hospital bylaws constitute contract between physician and hospital); *Lawler v. Eugene Wuesthoff Mem. Hosp. Ass'n*, 497

So.2d 1261, 1264 (Fla.Dist.Ct.App.1986) ("majority view is that a Hospital's By-laws, when approved and adopted by the governing board, become a binding and enforceable contract"); *Robinson v. Magovern*, 521 F.Supp. 842, 925 (W.D.Pa.1981) (same), *aff'd* 688 F.2d 824 (3d Cir.), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982); *St. John's Hosp. Medical Staff v. St. John Regional Medical Center, Inc.*, 90 S.D. 674, 245 N.W.2d 472 (1976) (medical staff bylaws are enforceable part of contract between physician and hospital); *Berberian v. Lancaster Osteopathic Hosp. Assoc.*, 395 Pa. 257, 149 A.2d 456 (1959) (bylaws become an "integral part" of the contract between the medical staff member and the hospital).

We see no merit in the Hospital's argument that the medical staff, but not the Hospital, is bound by the staff bylaws. The fair hearing procedure which the Hospital seeks to avoid was adopted by the Hospital in compliance with Tennessee regulatory law, which requires all licensed hospitals to promulgate bylaws containing fair hearing procedures:

> The hospital and medical staff bylaws *shall contain procedures* governing decisions or reconsiderations of appropriate authorities concerning the granting, revocation, suspension, and removal of medical staff appointments, re-appointments, and/or delineation of privileges.

*Tennessee Administrative Compilation*, § 1200–8–3–.02(2)(a) (emphasis added). The regulations further require that the Hospital "adhere to [its] provisions":

> Whenever the rules and regulations of this chapter require that a licensee develop a written policy, plan, procedure, technique, or system concerning a subject, the licensee shall develop the required policy, maintain it and adhere to its provisions.

*Tennessee Administrative Compilation*, § 1200–8–1–.01(38).

As the Tennessee Court of Appeals noted, "to suggest [that the Hospital has no legal duty to follow its own bylaws] would be to reduce the bylaws to meaningless mouthing of words." *See Chalasani v.*

*Neuman,* 97 A.D.2d 806, 468 N.Y.S.2d 672, 673 (1983), *reversed on other grounds,* 64 N.Y.2d 879, 487 N.Y.S.2d 556 (N.Y.1985).

### CLINICAL PRIVILEGES

The Hospital next argues that even if the bylaws do constitute a contract, the fair hearing bylaw provisions do not come into play because Alfredson's privileges were not terminated or reduced, and no action taken by the Hospital invokes the provisions of the fair hearing plan set forth in the medical staff bylaws. According to the Hospital, medical "staff membership" and "clinical privileges" are distinct and different items. It argues medical staff appointment is membership in the body created by the bylaws. "Clinical privileges" is the permission granted to render specific services as defined in the bylaws, which set up procedures for a request for privileges which are ultimately granted by the board. The Hospital contends that the two are separate, that clinical privileges granted to hospital-based specialities *do not grant access* to Hospital equipment or personnel, and that Alfredson's staff privileges have not been adversely affected, even though he has no access to the facilities or personnel at Lewisburg Community Hospital. The Hospital cites *Collins v. Associated Pathologist, Ltd.,* 844 F.2d 473 (7th Cir. 1988), for authority that clinical privileges granted in the area of hospital-based specialities do not grant access to the equipment owned by the hospital and the personnel paid by the hospital. However, *Collins* is inapposite because in that case the plaintiff's dispute was with the separate firm which provided pathology services to the defendant hospital. The firm forced the pathologist to resign from the firm, and he thereafter sought employment at the hospital as an independent pathologist. The hospital, which had played no role in securing the pathologist's resignation, did nothing to reduce or remove the pathologist's staff privileges; the hospital simply refused to employ him as a pathologist. Here, the Hospital has granted privileges, but later affirmatively barred Alfredson from using any Hospital radiological facilities or staff.

The Hospital further argues that the exclusive radiology contract protected only Alfredson's medical staff appointment from automatic termination, and that access to equipment and privileges terminated automatically at the end of the contract. It says in light of the circumstances, Alfredson knew from his own contract the Hospital had decided an exclusive radiology contract was the more efficient way to operate. The Hospital contends that if the contract is interpreted to allow clinical privileges to continue, the Hospital has effectively relinquished its ability to enter into an exclusive contract after termination of Alfredson's contract, even though the exclusive contract is the most efficient method of operation.

However, the Hospital's Medical and Dental Staff Bylaws recognize the relationship between membership on the active medical staff and a doctor's clinical privileges. As the Court of Appeals noted in its opinion:

> They define the "Medical Staff" as 'the formal organization of all duly licensed physicians, dentists and podiatrists who have been granted privileges by the Board....' They also require the medical staff to administer "a credentials procedure, including mechanisms for appointment and reappointment and the delineation of clinical privileges." *See* Bylaws § 2.2(a)(3).

> Doctors applying for appointment or reappointment to the active medical staff must request the specific clinical privileges they desire. *See* Bylaws 6.2(b)(3), 7.2(a). Membership on the active medical staff confers "only such clinical privileges and prerogatives as have been granted by the Board and the Governing Authority," *see* Bylaws 3.1, and staff members may exercise only those privileges granted pursuant to Article VII of the Bylaws. *See* Bylaws §§ 4.2(b)(3), 7.1. Necessarily, it follows that members of the active medical staff may use the hospital facilities necessary to enable them to exercise their delineated staff privileges.

After the foregoing analysis, the Court of Appeals observed, and we agree,

It is fair to conclude that the hospital granted Dr. Alfredson specific, delineated clinical privileges enabling him to practice radiology at the hospital. His contract required them. The bylaws themselves required that he seek them and likewise required the hospital to grant them. With hospital-based specialties such as radiology, the inability to use the hospital facilities and staff would have rendered the clinical privileges meaningless. Thus, necessarily included with Dr. Alfredson's privileges was the right to use hospital facilities and staff.

## CONCLUSION

Dr. Alfredson, as a member of the Hospital's active medical staff, had a contractual right to insist that the Hospital follow its bylaws. The bylaws' fair hearing plan requires notice and a hearing with regard to actions or recommendations initiated by the board or governing authority without prior recommendation by the medical executive committee, if those actions or recommendations significantly reduce a doctor's clinical privileges. All agree that the Hospital's governing authority acted alone, without any recommendation by the medical executive committee, and that no notice or hearing was provided.

The Court of Appeals found the record deficient with regard to the precise scope of Alfredson's clinical privileges and, accordingly, said whether he was entitled to a hearing under the bylaws remained to be decided, because the scope of his privileges had to be determined before it could be decided whether or not they were significantly reduced.

The Court of Appeals then remanded the case to the trial court to first determine what Alfredson's clinical privileges were, and then to determine whether the Hospital's refusal to give him access to its equipment and staff after January 2, 1986, significantly reduced his privileges. The Court of Appeals said: "If the hospital's actions did significantly reduce Dr. Alfredson's clinical privileges, then the trial court must find that Dr. Alfredson was entitled to a hearing and that the hospital breached its contract by failing to provide him one."

We disagree with the Court of Appeals, and believe the record is sufficient for the purpose of determining whether Dr. Alfredson's clinical privileges were significantly reduced. We know from his professional corporation's contract that his privileges were broad enough to enable him to provide the radiology specialist services at the Hospital. The contract defines specialist services as

those services normally associated with the practice of radiology, including without limitation diagnostic radiology and such other divisions of the science as may by common practice become part of the practice of diagnostic radiology and related support and consultive services for other departments of the hospital and the medical staff.

Alfredson's clinical privileges are further delineated in the record as follows: diagnostic radiographic exams, routine radiographic interpretations, routine fluoroscopic; upper GI, barium enema, gallbladder series; small bowel series; chest and cardiac fluoroscopy, sinography, special studies, arteriography, venography, transfemoral, transauxiliary and other diagnostic evaluations. In addition, it is clear that Dr. Alfredson had previously functioned for five years under an exclusive radiology contract with the Hospital, performing all radiology services.

■ We, therefore, hold that the Hospital's refusal to give Dr. Alfredson access to its radiological equipment and staff after January 2, 1986, significantly reduced his privileges. It follows that Dr. Alfredson was entitled to a hearing under the medical staff bylaws, and that the Hospital breached its contract by failing to provide him a hearing. As a result, we affirm the Court of Appeals' holding that the Hospital was not entitled to a summary dismissal of Dr. Alfredson's claims arising from the Hospital's failure to follow its bylaws, and affirm its action vacating the Hospital's summary judgment in part. We reverse the Court of Appeals' decision that genuine factual is-

sues exist concerning whether the Hospital significantly curtailed Dr. Alfredson's clinical privileges by denying him access to its radiological equipment and staff, and its resulting remand to the trial court.

Having determined that Dr. Alfredson's clinical privileges are sufficiently set out in the record for this purpose, we hold, as a matter of law, that his privileges were significantly reduced when the Hospital denied him access to its equipment and its staff. It follows that the medical staff bylaws required the Hospital to grant him a hearing when his clinical privileges were significantly reduced, and that by not doing so, the Hospital breached its contract.

The cause is remanded to the trial court for further proceedings consistent with this opinion. Costs of the appeal are taxed to Lewisburg Community Hospital.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.