A. RON VIRMANI, M.D., PLAINTIFF v. PRESBYTERIAN HEALTH SERVICES CORP., DEFENDANT

No. COA96-1263

(Filed 5 August 1997)

1. **Hospitals and Medical Facilities or Institutions § 39 (NCI4th)— physician's staff privileges—bylaws as part of contract**

   Hospital bylaws governing the suspension and termination of a physician's staff privileges were an integral part of the physician's contract with the hospital, even though the hospital was required by statute to have such bylaws and the physician was required by statute to comply with the bylaws, where the physician agreed to be bound by the bylaws as a condition of receiving staff privileges, and pursuant to this agreement the physician became a member of the medical staff at the hospital and treated his patients in the hospital.

**2. Hospitals and Medical Facilities or Institutions § 39 (NCI4th)— physician's staff privileges—termination—failure to follow bylaws—hospital not immune under bylaws**

A hospital bylaw providing that no representative of the hospital or its staff will be liable for damages or any other relief for any action, statement or recommendation within the scope of his or her peer review duties did not grant immunity to the hospital for breach of contract by failing to follow its bylaws in terminating a physician's hospital staff privileges.

**3. Hospitals and Medical Facilities or Institutions § 39 (NCI4th)— physician's staff privileges—termination—failure to follow bylaws—different peer review personnel—no authority by court**

Where the trial court found that defendant hospital did not follow the peer review procedure provided by its bylaws in terminating plaintiff physician's staff privileges, the court did not have the authority to require the hospital to conduct a new peer review process utilizing personnel different from that called for in the bylaws.

**4. Hospitals and Medical Facilities or Institutions § 39 (NCI4th)— termination of staff privileges—federal statute—attorney fees not warranted**

Defendant hospital was not entitled to attorney fees under the Health Care Quality Improvement Act in an action arising from the termination of plaintiff physician's hospital staff privileges where plaintiff neither alleged nor tried to prove that the hospital violated any provisions of the Act.

Appeal by defendant from order dated 30 July 1996 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 May 1997.

*Underwood, Kinsey, Warren & Tucker, by William L. Sitton, Jr., for plaintiff-appellee.*

*Johnston, Taylor, Allison & Hord, by Patrick E. Kelly, and Greg C. Ahlum, for defendant-appellant.*

GREENE, Judge.

Presbyterian Health Services Corp. (Presbyterian) appeals an order granting A. Ron Virmani's, M.D., (Virmani) request for an

injunction directing compliance with certain Medical Staff Bylaws (Bylaws).

Virmani filed suit against Presbyterian (which operates two hospitals in the Charlotte area) claiming a breach of contract when his medical staff privileges (in those hospitals operated by Presbyterian) were suspended without the benefit of an opportunity to respond (at an early stage of the investigation) to allegations regarding his competence to practice medicine in hospitals operated by Presbyterian. Specifically Virmani claims the investigation was conducted pursuant to section 8.0-2 of the Bylaws and that section (entitled Peer Review Referral) requires that he, prior to any action by the Committee, be given notice of allegations and an opportunity to be heard before the Committee. Virmani seeks actual and consequential damages, attorneys' fees, and an injunction to prevent Presbyterian from suspending his privileges except in accordance with the Bylaws.

The matter came on for hearing before the trial court pursuant to competing motions for summary judgment. The evidence presented at the hearings on these motions reveals that Virmani was board-certified in obstetrics and gynecology and maintained a solo practice in Matthews, North Carolina, at the time he applied for and was granted staff privileges at one of the hospitals operated by Presbyterian. The Bylaws, a copy of which he received upon his application for privileges, provide that the granting of privileges is conditioned upon the applicant's agreement to be bound by the terms of the Bylaws. Bylaws § 6.2-2(a). As a member of the medical staff Virmani is granted the privilege to "formulate . . . and recommend" amendments to the Bylaws. Bylaws § 16.1.

Fourteen months after receiving his privileges Virmani, while performing a pelvic laparoscopy in the hospital, punctured a patient's iliac artery. Two weeks later, Simon V. Ward, M.D., (Ward), the Chairman of the OB/GYN Department, met with Virmani and informed him that Paul F. Betzold, (Betzold) President and CEO of Presbyterian, requested that an inquiry of the incident be conducted. Ward sought the assistance of the standing OB/GYN Peer Review Committee (Committee) to conduct the inquiry. During the next five months the Committee examined 102 of Virmani's cases and found 24 of them to be problematic in one of three areas: procedures performed without indication, documentation discrepancies, and medical management issues. At no time during the inquiry was Virmani questioned or given an opportunity to respond with regard to his treatment of the 102 cases investigated by the Committee. The

Committee, upon completion of its investigation, made its report to Ronald L. Brown, M.D., (Brown) the new OB/GYN chairman. Several months later Betzold notified Virmani that after reviewing the Committee's report he was suspending his "clinical privileges . . . at the Presbyterian Hospitals," pending review by the Medical Board. Virmani received permission to address the Medical Board to present reasons why his privileges should not be suspended. The Medical Board upheld Virmani's summary suspension. Virmani then made a timely request for a *de novo* hearing before a three-person Hearing Committee as provided by Article IX of the Bylaws. Three months later the *de novo* hearing was conducted at which time Virmani was given full due process rights, including the right to be present, the right to call and examine witnesses, and to cross examine witnesses. The Hearing Committee voted to affirm the suspension.

Upon review of the Hearing Committee's report, the Medical Board unanimously voted to terminate Virmani's staff privileges and submitted its decision to the Board of Trustees of the Hospital for approval. Virmani requested an appeal before the Board of Trustees which was granted. The Board of Trustees unanimously upheld the decision to terminate Virmani's physician privileges.

The trial court granted Presbyterian's motion for summary judgment on Virmani's claim for monetary damages and granted Virmani's motion for summary judgment seeking injunctive relief. The order directed Presbyterian to conduct a new Peer Review hearing allowing Virmani to respond to written queries from the Committee, prior to its recommendation to the department chairman. The order further provided that the "members of the . . . Committee are to be different from the prior physicians who served on that Committee, and they are not to be OB-GYN physicians who maintain an office within the town limits of Matthews, North Carolina, or part of a medical group that maintains such an office." The order directed that there must be a "substitute" selected to act as chairman of the OB/GYN department for the purposes of receiving and acting on the recommendations of the Committee. The trial court denied Presbyterian's claim that it should be awarded attorney's fees under the Health Care Quality Improvement Act (Act), 42 U.S.C. § 11113.

The issues are (I) whether the termination of Virmani's privileges was conducted pursuant to section 8.0-2 of the Bylaws; and if so, (II) whether the provisions of section 8.0-2 were violated; and if so, (III) whether a breach of the Bylaws gives rise to a claim for breach of

contract; and if so, (IV) whether the Bylaws provide Presbyterian immunity from damages and injunctive relief; and if not, (V) whether the trial court can style injunctive relief so as to set the membership of the Committee; and (VI) whether Presbyterian is entitled to attorneys' fees.

## I

Presbyterian argues that Virmani's privileges were not suspended pursuant to section 8.0-2[1] of the Bylaws but instead pursuant to section 8.2[2] and the latter section allows for summary suspension without the benefit of any prior notice or hearing. We disagree. Although it does appear (an issue we need not decide in this case) that section 8.2 allows for the summary suspension of the privileges of any physician whose conduct "requires that immediate action be taken to protect the life of any patient(s)," in this case the issue of Virmani's

---

1. § 8.0-2 Peer Review Referral: Whenever a substantial question regarding quality of patient care, ethics or other definable Medical Staff responsibility is raised concerning an individual Staff member, and the peer review member(s) is unsatisfied with the individual's response to their written query, a referral of the issues shall be made in writing, to the chairperson of the department in which the Staff member serves.

2. § 8.2 Summary Suspension:

8.2-1 Criteria and Initiation: Whenever a physician's/oral surgeon's conduct requires that immediate action be taken to protect the life of any patient(s) or to reduce the substantial likelihood of immediate injury or damage to the health or safety of any patient, employee or other person present in the Hospital, either the (1) chair of department or his/her designee, (2) the President, or (3) the chief of Staff shall have the authority to summarily suspend the Staff membership status or all or any portion of the clinical privileges of such physician/oral surgeon.

Such summary suspension shall become effective immediately upon imposition, and the Hospital President shall promptly give special notice of the suspension to the physician/oral surgeon. In the event of any such suspension, the physician/oral surgeon's patients then in the Hospital whose treatment by such physician/oral surgeon is terminated by the summary suspension shall be assigned to another physician/oral surgeon by the department chairperson. The wishes of the patient shall be considered, where feasible, in choosing a substitute physician/oral surgeon.

8.2-2 Medical Board Action: As soon as possible after such summary suspension, a meeting of the Medical Board shall be convened to review and consider the action taken. The Medical Board may modify, continue or terminate the terms of the summary suspension.

8.2-3 Procedural Rights: Unless the Medical Board immediately terminates the suspension and ceases all further corrective action, the physician/oral surgeon shall be entitled to the procedural rights as provided in Article IX, and the matter shall be processed in accordance with the provisions of the Fair Hearing Plan.

VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.

[127 N.C. App. 71 (1997)]

suspension was directed to the Committee which was asked to make a recommendation to the department chair. Thus, although the suspension may have qualified for a summary suspension under section 8.2-1, it was not handled in that manner and instead was treated as a peer review referral under section 8.0-2, with the Committee making a recommendation to the department chair who in turn submitted the recommendation to the President, who then suspended Virmani.

## II

Presbyterian makes no argument that a section 8.0-2 hearing does not require a written query from the Committee to Virmani, prior to making a recommendation to the department chair. Indeed section 8.0-2 is specific in permitting referrals to the department chair only after providing the physician under investigation an opportunity to respond to written queries from the Committee.

## III

[1] Presbyterian argues that even if the Bylaws were not followed there does not arise any claim by Virmani for breach of contract. Specifically it argues that because it is required by statute to have bylaws governing the suspension and termination of a physician's privilege to practice in hospitals, see N.C.G.S. § 131E-85(a) (1994), and because Virmani was required by statute to comply with the Bylaws, N.C.G.S. § 131E-85(d), "there was no mutual exchange of consideration" and therefore no contract.

We acknowledge the general rule that the promise to perform an act which the promisor is already bound to perform cannot constitute consideration to support an enforceable contract. *Warzynski v. Empire Comfort Sys.*, 102 N.C. App. 222, 231, 401 S.E.2d 801, 806 (1991). Thus the mere enactment of a set of bylaws pursuant to the statute is a preexisting duty and cannot itself constitute consideration for the formation of a contract. When, however, a hospital offers to extend a particular physician the privilege to practice medicine in that hospital it goes beyond its statutory obligation. *See* N.C.G.S. § 131E-85(a) (granting of privilege to physician not mandated and to be determined by hospital on a "non-discriminatory basis"). If the offer is accepted by the physician, the physician receives the benefit of being able to treat his patients in the hospital and the hospital receives the benefit of providing care to the physician's patients. If the privilege is offered and accepted, each confers a benefit on the other and these benefits constitute sufficient and legal consideration

**VIRMANI v. PRESBYTERIAN HEALTH SERVICES CORP.**

[127 N.C. App. 71 (1997)]

for the performance of the agreement. *See* 17A Am. Jur. 2d *Contracts* § 113, at 129 (1991) (consideration defined to include any "benefit accruing to one party"). If the offer includes a condition that the physician be bound by certain bylaws promulgated by the hospital and the physician accepts the offer, those bylaws become a part of the contract, as there is mutual assent to be bound by the bylaws. *See* 17A Am. Jur. 2d *Contracts* § 26, at 54 (mutual assent necessary for formation of contract); *see also Lewisburg Community Hosp., Inc. v. Alfredson*, 805 S.W.2d 756, 761 (Tenn. 1991) (medical staff member has a "contractual right to insist that the Hospital follow its bylaws"); *Lawler v. Eugene Wuesthoff Mem'l Hosp.*, 497 So. 2d. 1261, 1264 (Fla. Dist. Ct. App. 1986) (hospital bylaws binding and enforceable contract between hospital and physicians privileged to practice in hospital); *St. John's Hosp. Med. Staff v. St. John Reg'l Med. Ctr.*, 245 N.W.2d 472, 475 (S.D. 1976) (medical staff bylaws are an enforceable part of the contract between physician and hospital).

In this case Virmani applied for and was granted the privilege to practice medicine in the hospitals operated by Presbyterian. The application process was in accordance with the Bylaws[3] as adopted by Presbyterian[4] and Virmani agreed "to be bound by the terms" of the Bylaws in the event he was granted hospital privileges. Bylaws § 6.2-2(a). Pursuant to this agreement Virmani became a member of the medical staff at Presbyterian and treated his patients in its hospital. This evidence about which there is no genuine issue supports the determination that a valid and enforceable contract existed between Presbyterian and Virmani and that the Bylaws were an integral part of that contract.[5]

---

3. "Each application for appointment to the Staff shall be in writing, submitted on the prescribed form, and signed by the applicant. When a physician or oral surgeon requests an application form, he/she shall be given a copy of, or access to a copy of, these Bylaws, the Staff Rules & Regulations, the Hospital corporate Bylaws and summaries of other Hospital and Staff policies relating to clinical practice in the Hospital." Bylaws § 6.2-1.

4. The preamble to the Bylaws indicates that the Bylaws were adopted by the Board of Trustees of Presbyterian. Any amendments to the Bylaws must be approved by the Board of Trustees. Bylaws § 16.1.

5. The issue of whether hospital bylaws are enforceable by a physician given hospital privileges is similar to the issue of whether employment manuals or policies are an enforceable part of an employment contract. "[U]nilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it." *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83-84 (1985), *disc. rev. denied*, 315 N.C. 597, 341, S.E.2d 39 (1986). In this case the Bylaws were not unilateral (medical staff had responsibility to "formulate . . . and

IV

**[2]** Presbyterian argues that even if Virmani is entitled to proceed on his breach of contract claim, that claim must nonetheless be dismissed because its Bylaws provide it immunity from this claim. We disagree. Section 14.4-1 of the Bylaws, the section relied on by Presbyterian, provides:

> No representative of the Hospital or its Staff shall be liable to a Health Practitioner *for damages or other relief* for any action taken or statement or recommendation made within the scope of his/her duties as a representative, if such representative acts in good faith and without malice after a reasonable effort under the circumstances to ascertain the truthfulness of the facts and in the reasonable belief that the action, statement, or recommendation is warranted by such facts.

(Emphasis added). This Bylaw does not provide any immunity to Presbyterian. The plain and unambiguous language of the Bylaw provides immunity only to "representative[s]" or "Staff" of the hospitals operated by Presbyterian. Thus Presbyterian is not entitled to any immunity under the provisions of section 14.4-1.[6]

V

**[3]** Presbyterian argues that even if it is not immune from injunctive relief the particular relief fashioned by the trial court in this case is beyond its authority. It argues that requiring it to conduct a new peer review process utilizing personnel different from that called for in the Bylaws was error. We agree. "A court of equity cannot make a new contract for the parties . . . but must enforce the contract according to its terms or not at all." 71 Am. Jur. 2d *Specific Performance* § 211, at 270; *see McLean v. Keith*, 236 N.C. 59, 71, 72 S.E.2d 44, 53 (1952). In this case the Bylaws are designed to provide for internal peer review, *see* Bylaws § 8.0, and the order of the trial court interfered with that process. Accordingly this portion of the order of the trial

---

recommend" Bylaws) and they were expressly included in the agreement to grant the privilege (physician had to agree to be bound by Bylaws as condition of receiving privilege).

6. We note that the trial court did grant Presbyterian's motion for summary judgment on Virmani's claim for monetary damages on the grounds that federal (42 U.S.C. § 11101-11152) and state statutes (N.C. Gen. Stat. 131E-95) immunized Presbyterian from monetary damages. Neither party has appealed from this ruling and therefore its correctness is not addressed.

court must be reversed and on remand the new peer review process is to be conducted in accordance with the Bylaws and the personnel selected in a manner as determined by the medical staff of the hospital not inconsistent with the Bylaws.

[4] The Act provides for the payment of attorneys' fees in defense of a frivolous or unreasonable suit brought against a defendant under the Act. 42 U.S.C. § 11113. The purpose of providing the costs of legal representation is to encourage professional peer review by limiting the possibility of unreasonable litigation expenses. *Smith v. Ricks*, 31 F.3d 1478, 1487 (9th Cir.), *cert. denied*, 514 U.S. ——, 131 L. Ed. 2d 287 (1994).

Virmani has neither alleged nor tried to prove that Presbyterian violated the provisions of the Act. As such, Presbyterian's claim that it should be awarded attorneys' fees under the Act is unfounded. The trial court was correct, therefore, in ordering each party to pay its own costs, including attorneys' fees.

Affirmed in part, reversed in part and remanded.

Judges JOHN and WALKER concur.