John P.S. JANDA, M.D., Plaintiff,

v.

MADERA COMMUNITY HOSPITAL, Robert C. Kelley, Ronald Castonguay, M.D., Mohammad Arain, M.D., Kenneth Bernstein, M.D., Kanwal J. Singh, M.D., David B. Kaye, M.D., Theodore Nassar, M.D., Satwant Samrao, M.D., Louis Hernandez, M.D., David Berry, Anna Dasilva and Georgia Baker, Defendants.

No. CV–F–98–5021 OWW DLB.

United States District Court, E.D. California.

Aug. 17, 1998.

Scott R. Shewan, Born Pape and Shewan, Clovis, CA, Robert N. Meals, Meals and Bor, Seattle, WA, for Plaintiff.

Carey H. Johnson, Stammer McKnight Barnum and Bailey, Fresno, CA, for Defendants.

## MEMORANDUM OPINION RE: DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

WANGER, District Judge.

### I. INTRODUCTION

Plaintiff John P.S. Janda, a physician, initiated this suit on January 7, 1998, after the Madera Community Hospital closed its orthopedic department, alleging the closure was undertaken to eliminate non-Caucasian physicians to change the racial composition of the orthopedic department. Plaintiff asserts state law and civil rights claims under 42 U.S.C. §§ 1981, 1985(3) against Defendants.

Defendants move to dismiss Plaintiff's fourth and fifth claims for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). The motion is DENIED IN PART AND GRANTED IN PART.

### II. FACTUAL BACKGROUND

Plaintiff was born in India to Indian parents and is now a United States citizen. He is an orthopedic surgeon licensed to practice medicine in the state of California. In 1983,

Plaintiff was appointed to Madera Community Hospital's ("Hospital") courtesy medical staff. Three years later, in 1986, Dr. Janda was elevated to the Hospital's "active" staff.

The Hospital is a private, not-for-profit hospital organized under the laws of California. Its medical departments are managed under an "open" and "closed" system. In an "open staff" system, all "qualified" physicians with medical staff privileges are permitted to work at the Hospital in their respective medical departments. Under a "closed system," the Hospital contracts with an "exclusive provider" or particular physician group for certain medical services, thereby "closing" the medical practice to other physicians who are not members or employees of the contracted physician group.

At the beginning of 1997, the Hospital's orthopedic surgery staff operated under an "open" system. Dr. Janda and Dr. Ronald Castonguay, a Caucasian, were the only two orthopedic surgeons on the active staff. Dr. Soo–Ill Chang, an orthopedic surgeon, was a member of the Hospital's "courtesy" staff, but resigned his membership in April of 1997.

Because the orthopedics staff was experiencing heavy on-call and emergency room coverage in early 1997, Dr. Janda recommended to the Hospital it consider retaining Dr. Rajiv Puri, an orthopedic surgeon. Dr. Puri was born in India. Dr. Castonguay allegedly met with the Hospital's chief executive officer, Robert C. Kelley, and threatened to resign if Dr. Puri was retained on the orthopedics staff.

In May 1997, the Hospital, through its Chief Executive Officer, the Medical Executive Committee, and the Board of Trustees, in consultation with Dr. Castonguay, decided to "close" the orthopedic department and award an exclusive contract to Dr. Castonguay. The "closed" system, according to Dr. Janda, effectively vitiated his medical privileges at the Hospital.

Dr. Janda alleges that "Defendants' actions in awarding the exclusive contract to Dr. Castonguay, in excluding [him] from the medical staff, and in keeping Dr. Puri off the medical staff, were motivated by a belief that the medical staff was comprised of too many physicians from various ethnic minorities, and an expressed desire to bring more Caucasians onto the medical staff." Pl.'s Compl. at ¶ 19. Such racial animus contravenes the Hospital's bylaws, which provide that "[n]o aspect of medical staff membership or particular clinical privileges shall be denied on the basis of race, color, ethnic group, religion, national origin ... unrelated to the ability to fulfill patient care and required medical staff obligations."

Dr. Janda alleges the Hospital: (1) violated 42 U.S.C. § 1981; (2) violated 42 U.S.C. § 1985(3); (3) infringed a physician's right to practice his profession under California law; (4) breached their employment contract by violating the Bylaws; and (5) intentionally interfered with economic relations. Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs.

### III. Legal Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is disfavored and rarely granted: "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding a motion to dismiss, the court "must accept as true all material allegations in the complaint and construe them in the light most favorable to" the plaintiff. *NL Indus. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Conclusions of law, however, are not presumed true. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

The court need not accept as true allegations that contradict facts which may be judicially noticed. *Mullis v. United States Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *Mack v. South Bay*

*Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986), conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted, *Western Mining Council,* 643 F.2d at 624, and allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint, *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

## IV. ANALYSIS AND DISCUSSION

### A. Do the Hospital's Bylaws Create an Enforceable Contract?

According to the complaint, the relationship between the Hospital and its physicians is governed by the "Bylaws of the Medical Staff of Madera Hospital" ("Bylaws"). The Plaintiff contends that the "Bylaws form a contract between the Hospital and the members of its medical staff." Pl.'s Compl. at ¶ 9. Dr. Janda claims this "contract" was breached when Defendants, in violation of the Bylaws, closed the orthopedics department in order to exclude non-Caucasian physicians. *Id.* at ¶ 10. Defendants move to dismiss this cause of action on the grounds that Plaintiff has not established that the Bylaws constitute an enforceable contract between the Hospital and Plaintiff.

### 1. Split of Authority

Although there is no case directly on point in California [1], the majority of jurisdictions have held that hospital bylaws, when approved and adopted by the governing board, are a binding and enforceable contract between the hospital and physicians. *Islami v. Covenant Med. Ctr.,* 822 F.Supp. 1361, 1370–71 (N.D.Iowa 1992) (Iowa law is in accord with majority view that hospital's bylaws create enforceable contract); *Houston v. Intermountain Health Care, Inc.,* 933 P.2d 403, 408 (Utah Ct.App.1997); *Gonzalez v. San Jacinto Methodist Hosp.,* 880 S.W.2d 436, 439 (1994) (procedural rights prescribed by the hospital's bylaws are contractual under Texas law); *Lewisburg Community Hosp.,*

*Inc. v. Alfredson,* 805 S.W.2d 756, 759 (Tenn. 1991) (Hospital bylaws are an integral part of the contractual relationship between the hospital and its medical staff. Under the bylaws, the physician was entitled to a hearing because the hospital took adverse action against the physician which "significantly reduce[d] ... [his] clinical privileges."); *Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n,* 497 So.2d 1261, 1264 (Fla.App. 5th Dist.1986); *Anne Arundel Gen. Hosp., Inc. v. O'Brien,* 49 Md.App. 362, 370, 432 A.2d 483 (1981) (Under Maryland law, "it is well settled that hospital bylaws have the force and effect of an enforceable contract."); *Miller v. Indiana Hosp.,* 277 Pa.Super. 370, 419 A.2d 1191 (1980); *St. John's Hosp. Med. Staff v. St. John Reg'l Med. Ctr.,* 90 S.D. 674, 245 N.W.2d 472, 475 (1976) (medical staff bylaws are an enforceable contract between physician and hospital); *see also Balkissoon v. Capitol Hill Hosp.,* 558 A.2d 304, 308 (D.C. 1989) ("Thus, although the bylaws may create contractual rights, the Hospital's obligation to act in accordance with its bylaws is independent of any contractual right of appellant.").

These courts apply little, if any, contract law analysis in concluding that hospital bylaws create an enforceable contract. *See* Charles R. Galloway, *Observation: Exclusive Contracts and the Staff Physician,* 66 MISS. L.J. 479, 485–86 (1996). For example, in *Berberian v. Lancaster Osteopathic Hosp. Ass'n. Inc.,* 395 Pa. 257, 149 A.2d 456 (1959), the court simply held that "when the board of directors approved the staff by-laws, they became an integral part of the contractual relation between the hospital and the members of its staff." *Id.* 149 A.2d at 459.

However, in *Virmani v. Presbyterian Health Services Corp.,* 127 N.C.App. 71, 488 S.E.2d 284 (1997), the North Carolina Court of Appeals, after a thorough analysis of contract law, held that hospital bylaws constitute an enforceable, binding contract between the hospital and its medical staff. *Id.* 488 S.E.2d at 287–88. In that case, the hospital argued that no contract was formed because there

---

**1.** Plaintiff's reliance on *Westlake Community Hosp. v. Superior Court,* 17 Cal.3d 465, 131 Cal. Rptr. 90, 551 P.2d 410 (1976), is misplaced because that court did not address the contract issue.

was no "mutual exchange of consideration" given that the hospital was statutorily required to enact bylaws governing the suspension and termination of a physician's privilege to practice in the hospital. *Id.* at 287. The court decided to the contrary:

> We acknowledge the general rule that the promise to perform an act which the promisor is already bound to perform cannot constitute consideration to support an enforceable contract. Thus the mere enactment of a set of bylaws pursuant to the statute is a preexisting duty and cannot itself constitute consideration for the formation of a contract. When, however, a hospital offers to extend a particular physician the privilege to practice medicine in that hospital it goes beyond its statutory obligation. If the offer is accepted by the physician, the physician receives the benefit of being able to treat his patients in the hospital and the hospital receives the benefit of providing care to the physician's patients. If the privilege is offered and accepted, each confers a benefit on the other and these benefits constitute sufficient and legal consideration for the performance of the agreement. See 17A Am.Jur.2d, Contracts § 113, at 129 (1991) (consideration defined to include any "benefit accruing to one party"). If the offer includes a condition that the physician be bound by certain bylaws promulgated by the hospital and the physician accepts the offer, those bylaws become a part of the contract, as there is mutual assent to be bound by the bylaws.

*Id.* at 288 (internal citations omitted).

By contrast, the minority view is that hospital bylaws do not create a contract per se between the hospital and its medical staff. *Gianetti v. Norwalk Hosp.,* 211 Conn. 51, 57–58, 557 A.2d 1249 (Conn.1989); *Robles v. Humana Hosp. Cartersville,* 785 F.Supp. 989, 1001–02 (N.D.Ga.1992); *compare Gonzalez v. San Jacinto Methodist Hosp.,* 880 S.W.2d 436, 439 (Tex.App.-Texarkana 1994)

(procedural rights prescribed by the hospital's bylaws are contractual under Texas law) *with Weary v. Baylor Univ. Hosp.,* 360 S.W.2d 895, 897–98 (Tex.Civ.App.-Waco 1962) (bylaws promulgated by *medical staff* did not create an enforceable contract between the hospital and its physicians).

In *Gianetti,* a physician asserted, inter alia, a breach of contract claim against the hospital, based on purported violations of the medical staff bylaws, arguing that once the hospital's board of directors approved the bylaws "they became an integral part of the contractual relationship between the hospital and the members of the staff." *Gianetti,* 211 Conn. at 52, 58, 557 A.2d 1249. The hospital contended the bylaws are self-imposed strictures that in no way resulted from negotiations with the plaintiff. *Id.* at 58–59, 557 A.2d 1249. The Connecticut Supreme Court held that the Norfolk Hospital bylaws, *by themselves,* did not constitute an enforceable contract between the hospital and the physician because the governing board of the hospital already had a legal duty to adopt "bylaws, rules and regulations, including medical staff bylaws."[2] *Id.* at 59, 557 A.2d 1249; *see also Robles,* 785 F.Supp. at 1001 (The bylaws cannot be considered a contract per se because there is no mutual exchange of consideration which brought them into existence as state law required the hospital to create the bylaws and develop a procedure for reviewing the doctor's competency.). The court also found the bylaws were not bargained for because the bylaws were unilaterally written and adopted by the hospital without any input from the plaintiff. *Gianetti,* 211 Conn. at 61, 557 A.2d 1249; *see also Robles,* 785 F.Supp. at 1002 ("Furthermore, there was no bargained for exchange as to the procedures utilized in the bylaws. Plaintiff had no input into the bylaws, nor did he have the power to change them. Only the Hospital had the power to change the bylaws.").

Although the court concluded the bylaws did not create a contract per se, it held the

---

**2.** The issue presented to the court was: "Do the bylaws of a Connecticut Hospital constitute an enforceable contract between the hospital and its medical staff?" Because the response to this question would have affected physicians and hospitals who were not parties to the case, the *Gianetti* court reframed the dispositive issue as "Do the bylaws of the Norwalk Hospital constitute an enforceable contract between the hospital and Dr. Gianetti as a member of its medical staff?" *Id.* 211 Conn. at 57, 557 A.2d 1249.

bylaws were enforceable and subject to judicial review because: (1) of the contractual relationship existing between the doctor and the hospital; and (2) the bylaws were statutorily mandated. *Gianetti,* 211 Conn. at 63, 557 A.2d 1249. The medical staff bylaws were an integral part of the contractual relationship between the Hospital and the physician, and therefore, "[t]he rights and duties arising out of this contractual relationship, as in any contractual relationship, are subject to judicial review." *Id.* at 66–67, 557 A.2d 1249.

■ Though there is a split of authority, a common theme underlies these cases. The courts acknowledge that the bylaws govern the relationship between the hospital and its medical staff, and each party is required to perform in accordance with the terms of the bylaws. Consequently, an aggrieved physician can enjoin a hospital from contravening the terms and provisions of the bylaws. *See Mahmoodian v. United Hosp. Ctr.,* 185 W.Va. 59, 404 S.E.2d 750 (1991) (hospital's decision to revoke obstetrician's staff privileges is subject to limited judicial review to ensure substantial compliance with hospital staff bylaws); *Balkissoon,* 558 A.2d at 308 ("Hospital must afford doctor at least all the process and protections encompassed in its bylaws.").

The remaining issue is whether Plaintiff, in addition to injunctive relief, is entitled to recover money damages for the alleged breach of the bylaws. An award of monetary damages for a breach of the bylaws necessitates a finding that the bylaws constitute a privately enforceable contract between the hospital and its medical staff under California law.

2. *How Would the California Supreme Court Rule on the Contract Issue?*

■ Whether hospital bylaws create an enforceable contract is a question of first impression in California.[3] When interpreting state law, federal courts are bound by decisions of the state's highest court. *Nelson v. City of Irvine,* 143 F.3d 1196, 1206 (9th Cir. 1998). Absent such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.* However, where there is no convincing evidence that the state supreme court would decide differently, a federal court must follow the decisions of the state's intermediate appellate courts. *Id.*

Under California law, the four essential elements of a contract are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. Cal. Civ.Code § 1550. In presenting their arguments, the parties have exclusively focused on the Bylaws and overlooked the underlying contractual employment relationship existing between the Hospital and Dr. Janda. *Gianetti,* 211 Conn. at 63, 557 A.2d 1249 ("It is crucial to understand that the medical staff bylaws, per se, do not create a contractual relationship between the hospital and the [physician] but because of the" contractual employment relationship existing between the parties the bylaws have become an enforceable part of this contract.).

Here, an express employment contract was formed between the Hospital and Dr. Janda that is supported by valid consideration. The consideration consists of the Hospital's promise to employ Dr. Janda on stated terms and conditions and Dr. Janda's promise to work under those conditions. *See Balkissoon,* 558 A.2d at 308 ("In addition to serving the needs of their patients, hospitals also provide a place of employment for doctors

---

**3.** There are currently no published opinions by California state courts discussing this issue. The parties have referenced *Freeman v. Memorial Hospitals Ass'n,* No. F022775, which is currently on appeal in the California Court of Appeals, Fifth Appellate District. In that case, the trial court held, without analysis, that the bylaws constitute a "contract between the Hospital and the Medical Staff ...." *See* Appellant Freeman's Opening Brief, No. F022775, at 41.

On February 20, 1997, a bill was introduced in the California State Assembly providing that upon approval by the hospital's governing body, the hospital's "bylaws constitute a binding contract between the health facility and the organized medical staff." Cal. Assembly Bill No. 405 (Kuehl) (1997–98).

and other professionals."). The Hospital grants Dr. Janda medical privileges and the use of the hospital's resources and facilities. In exchange, the Hospital requires Dr. Janda to comply with the Hospital's bylaws, rules and regulations. Hospital's Bylaws Art. IV, section 4.1; *see also Rees v. Intermountain Health Care, Inc.*, 808 P.2d 1069, 1076 (1991) ("Hospitals generally will not grant a doctor privileges at the hospital until the doctor agrees to abide by the bylaws of the hospital."); *Gianetti*, 211 Conn. at 62, 557 A.2d 1249 ("By agreeing to extend privileges to the plaintiff physician, the hospital has then done something it was not already bound to do"; in exchange, physician agreed to abide by its medical staff bylaws. Requisite contractual mutuality was present and agreement was supported by valid consideration.); *see also Virmani*, 488 S.E.2d at 288.

■ The Hospital argues the bylaws do not create an enforceable contract because the bylaws are not supported by a "mutual exchange of consideration." Specifically, Defendants note that 22 Cal.Code of Regs. § 70701 mandates hospitals adopt written bylaws concerning the organization and governance of the hospital and its medical staff. The pre-existing legal duty doctrine provides that the doing or promising to do what one is already bound to do cannot be consideration for a promise. Further, Defendants point out that under California law physicians also have a legal duty to "abide by" the written bylaws adopted by the medical staff. 22 Cal.Code of Regs. § 70703(b).

Defendants frame the issue as: Do the bylaws, standing alone, constitute an enforceable contract? They do not dispute the parties had a contractual relationship in which the Hospital changed its position by granting medical staff and department employment privileges to Dr. Janda and Dr. Janda changed his position by agreeing to perform medical services at the hospital and to abide by the Hospital's bylaws. *See Koelling v. Board of Trustees of Mary Frances Skiff Mem. Hosp.*, 259 Iowa 1185, 146 N.W.2d 284, 291 (1966) ("These [bylaws] disclose an overall intent to supervise and control the activities of the individual members of the staff who, by accepting the [hospital] privileges,

have agreed to be bound by the by-laws and rules and regulations.").

Defendants' argument that physicians have a pre-existing legal duty under section 70703 to abide by the bylaws misses the point. Section 70703 requires physicians comply with the rules adopted by the *medical staff,* i.e., his medical peers and colleagues. It does not impose a requirement on physicians to comply with the bylaws adopted by the *governing body* of the hospital.

Section 70701 requires hospitals enact written by-laws concerning the mission and organization of the hospital. Cal.Code Regs, tit. 22, § 70701; *see, e.g.,* John Hulston et al., *Do Hospital Medical Staff Bylaws Create a Contract?,* 51 J. Mo. B. 352, 352 (1995) ("Typical medical bylaws cover such items as the relationship between the medical practitioners and the hospital; the organization of the practitioners into a medical staff, with officers and committees, delineation of requirements for obtaining and maintaining staff privileges, organization of the staff by departments or specialties and quality control, including peer review; confidentiality, immunity and releases; and finally, adoption and amendment of bylaws."). Section 70701 requires the bylaws conform to "legal requirements and [the hospital's] community responsibility," including but not limited to: identifying the purposes of the hospital and the means of fulfilling them; prescribing the appointment and reappointment of medical staff members; discussing formal organization of the medical staff with appropriate officers and bylaws; and requiring preparation and maintenance of a complete and accurate medical record for each patient.

Here, the Hospital's Bylaws are more expansive and comprehensive than the minimum requirements of California law. The Bylaws' preamble provides:

The Bylaws are adopted to provide a framework for self-government for the organization of the Medical Staff of Madera Community Hospital that permits the Medical Staff to discharge its responsibilities in matters involving the quality of medical care, to govern the orderly resolution of issues and the conduct of Medical Staff functions supportive of those pur-

poses, and to account to the Governing Body for the effective performance of Medical Staff responsibilities. *These Bylaws provide the professional and legal structure for Medical Staff operations, organized Medical Staff relations with the Governing Body,* and relations with applicants to and members of the Medical Staff. (emphasis added).

The Hospital's bylaws go beyond section 70701's requirements by prescribing rules concerning the scope of medical privileges, procedures for investigative and responsive actions by the hospital, and hearing and appellate mechanisms, all of which provide "the professional and legal structure for Medical Staff operations ... and relations ... with the Governing Body ...." These Bylaws imposed additional duties on the medical staff and the Hospital that exceed the scope of California's administrative requirements and constitute independent valid consideration for the physician-hospital contract. The Restatement of Contracts provides that "the performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration; but a similar performance is consideration if it differs from what was required by the duty in a way which reflects more than a pretense of a bargain." RESTATEMENT (SECOND) OF CONTRACTS § 73.

Dr. Janda's agreement to perform in accordance with the Hospital's bylaws requires him and the Hospital to do that which neither is legally bound to do under the California law governing rules for hospital medical staff. This constitutes valid consideration. Cal. Civ.Code § 1605 (Consideration is defined as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.").

Dr. Janda's contract requires him to abide by the Hospital's Bylaws, which are an integral element of the parties' contractually bargained-for employment relationship. The mutual duties prescribed by the Bylaws are contractually binding on and enforceable by both the Hospital and the physician.

### a. *Bylaws Created an Implied in Fact Contract*

■ An alternative ground, though not raised by the parties, is found in *Hillsman v. Sutter Community Hospitals of Sacramento,* 153 Cal.App.3d 743, 200 Cal.Rptr. 605 (1984). In *Hillsman,* the hospital and physician entered into a written agreement under which the physician was to be employed as a full-time, hospital-based physician. *Id.,* 200 Cal. Rptr. at 607, 153 Cal.App.3d 743. The hospital terminated the physician's employment, and the plaintiff alleged that the termination was contrary to an implied promise that termination would be in accordance with the bylaws. *Id.,* 200 Cal.Rptr. at 608. The appellate court reversed the trial court dismissal's of plaintiff's implied contract claim, finding plaintiff sufficiently pled he was terminated in violation of the hospital's bylaws. *Id.,* 200 Cal.Rptr. at 613 ("An employer may maintain rules or procedures related to the termination of employment which may form part of an implied contract of employment if the employer had a mutual understanding that the rules or procedures would apply to the employee."). The principle that the employer's rules and policies are binding on the employer as well as the employee, and violation by the employer of its rules and policies gives rise to a claim for breach of the employment contract is well established. *See, e.g., Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 680, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) ("In the employment context, factors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including 'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.' ") (quoting *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 327, 171 Cal.Rptr. 917 (1981)).

Here, Dr. Janda alleges that he and the Hospital had a mutual understanding that any adverse employment action affecting his medical privileges would comply with the terms of the bylaws. The Bylaws provide that "[n]o aspect of medical staff membership or particular clinical privileges shall be denied on the basis of race, color, ethnic group, religion, national origin . . . unrelated to the ability to fulfill patient care and required medical staff obligations." Dr. Janda asserts the Hospital "closed" the orthopedics department because of racial animus against Plaintiff and other minority doctors in contravention of the Bylaws. These factual allegations are sufficient to state a claim that the Hospital violated the implied in fact contract that it would terminate an orthopedic staff member's medical privileges only in accordance with the non-discrimination provision of the Bylaws. *Cf. McLain v. Great American Ins. Companies*, 208 Cal.App.3d 1476, 256 Cal. Rptr. 863 (1989) (in an action for wrongful termination court found existence of an implied contract that employee could only be terminated for cause based on, among other things, employer's personnel manual); *see also Bass v. Ambrosius*, 185 Wis.2d 879, 520 N.W.2d 625, 627 (App.1994) ("The general rule that hospital bylaws can constitute a contract between the hospital and its staff is consistent with the law in this state that an employee handbook written and disseminated by the employer, and whose terms have been accepted by the employee, constitutes a contract between the employer and the employee.").

B. *The Claim for Interference With Economic Relations*

Under California law, an actionable cause of action for intentional interference with prospective economic advantage requires plaintiff allege: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Westside Ctr. Assocs. v.*

*Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 522, 49 Cal.Rptr.2d 793 (1996).

Defendants argue that Plaintiff has failed to state a claim for interference with economic relations because Plaintiff has not specifically identified an existing or future relationship with a patient that has been impaired by the Hospital's actions. Citing *Rickards v. Canine Eye Registration Foundation, Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983) (court granted Defendant's *motion for summary judgment* because Plaintiff did not present evidence that an ongoing relationship between appellants and third parties had been disrupted); *Roth v. Rhodes*, 25 Cal. App.4th 530, 546, 30 Cal.Rptr.2d 706 (1994) (allegation of interference with a relationship between a health care provider and *future* patients is insufficient).

In his complaint, Plaintiff alleges Defendants' tortious conduct impaired his economic relationship with his existing patients and potential patients in the Madera County area. He does not specify the identities of the alleged patients. Although there is no reason for him not to expressly identify these existing patients, Plaintiff is bound by Federal Rule of Civil Procedure 11. The substance of Plaintiff's allegations is that Defendant's termination of his employment impaired his economic relationships with his existing patients. This pleading, even if improvable, survives a motion to dismiss. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986) (In deciding a motion to dismiss, the court must "accept as true all material allegations in the complaint and construe them in the light most favorable to" the plaintiff.). The substantive law of California does not require more. *See Speegle v. Board of Fire Underwriters of the Pacific*, 29 Cal.2d 34, 42, 172 P.2d 867, 872 (1946) (Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears.).

As to "future" lost patients, the pleading is speculative and insufficient. *Roth*, 25 Cal.App.4th at 546, 30 Cal.Rptr.2d 706. "Plaintiff must establish an actual economic relationship or a protected expectancy

with a third person, not merely a hope of future transactions." *See Brown v. Allstate Ins. Co.,* 17 F.Supp.2d 1134, 1139 (S.D.Cal. 1998). Plaintiff is given leave to amend the complaint to specifically identify the "future" lost patients.

Defendants' motion to dismiss the Fifth cause of action as to future patients is GRANTED WITH LEAVE TO AMEND.

### V. CONCLUSION

For the reasons stated, Defendants' motion to dismiss the:

(1) Fourth cause of action is DENIED; and

(2) Fifth cause of action is GRANTED IN PART AND DENIED IN PART.

Plaintiff shall have twenty business days from the date of service of this memorandum opinion to amend his complaint in accordance with this opinion.

Counsel for Plaintiff shall prepare an order in conformity with this memorandum opinion and lodge it with the court within five (5) business days following the date of service of this opinion.

IT IS SO ORDERED.